## BAGBY & RIVERS COMPANY *vs.* ARTHUR D. RIVERS.

*Trade Name—Contract Giving Right to Use Name of Retiring Partner by Continuing Partner—Transfer of Right to Use Name to Corporation—Injunction Restraining Use of Name—Construction of Agreement Not to Engage in Certain Business—Good Will.*

A partner who carries on the business of a dissolved firm and who has acquired the personal right to use therein the name·of the retiring partner is not authorized to assign the right to use such name to a corporation formed for the purpose of continuing the same business.

Where a contract gives the right to use a fictitious or a trade-name or trade-mark or corporate name, though composed of individual names, or where the good will of a business includes the right to use names of that character, then such right may be assigned by the purchaser of the business. But where a contract merely gives to one person the right to use the name of another in business, such right is personal, and, in the absence of an express stipulation permitting it, cannot be transferred by the purchaser to a third party.

A party may be restrained by injunction from using in business a name to which he is not entitled when the use of the name is calculated to interfere with the business of another who is lawfully using that name, although no actual damage is shown.

Upon the dissolution of the firm of B. & R. it was agreed that the good will of the concern should belong to B., and R. agreed that he would permit B. to continue the use of his name in the style of the firm. R. also agreed that he would not engage in the same business in Baltimore City so long as B. continued in it. B. then carried on the business alone in the name of B. & R. Subsequently a corporation was formed called the B. & R. Co., to which B. transferred all his rights and his business. R. then formed a corporation called the R. Co. for the purpose of conducting the same business and applied for an injunction to restrain the B. & R. Co. from using his name in its corporate·title. The B. & R. Co. filed a cross-bill asking that R. and the R. Co. be enjoined from using the name of R. in their business. *Held,*

1st. That under the agreement the right to use the name of R. in the business of B. & R. was conferred upon B. personally so long as he continued the business of the old firm, but that he was not authorized to assign the right to use the name to the corporation of B. &

R. Co., and that this company should be enjoined from using the name of R.

2nd. That when B. assigned his whole business, together with the name of the B. & R. Co. he ceased to continue the business of the old firm, and that thereupon R. was entitled to engage in the same business *

Appeal from a decree of the Circuit Court of Baltimore City (DENNIS, J.), by which the Bagby & Rivers Co. were enjoined from using the name Rivers as part of its corporate title, and dismissing the cross-bill filed by that company against Arthur D. Rivers and the Rivers Furniture Company, asking that Rivers be enjoined from conducting the furniture business in Baltimore City, and that the Rivers Co. be enjoined from using that name.

The cause was argued before McSHERRY, C. J., FOWLER, BRISCOE, PAGE, ROBERTS, BOYD and PEARCE, JJ. (March 9, 1898).

*William A. Fisher* and *Frank Gosnell* (with whom were *Pollard & Bagby* on the brief), for the appellant.

The decree of the lower Court should be reversed for the following reasons : 1. Because by the sale from Rivers to Bagby the name "Bagby & Rivers" passed to Bagby, and by subsequent transfer from the latter to the appellant. 2. Because Rivers transferred to the "Rivers Furniture Company" any right he may have had to use his own name, and, moreover, he has failed to prove any loss or injury. 3. Because he is estopped from claiming that the appellant has no right to use the old firm name "Bagby & Rivers." 4. Because Rivers has no right to engage in the furniture business in Baltimore, and by forming the Rivers Furniture Company and acting as its president he has violated his covenant not to engage in said business, and the appellant is entitled to an injunction against him for so doing, and for soliciting the former customers of Bagby & Rivers, and

---

* See note in appendix relating to trade-names.

against his company, for wrongfully detracting the trade of the appellant.

I. The *good will* and the firm name " *Bagby & Rivers,*" were valued by the partners at $8,000. Rivers having received $4,000, his one-half thereof, agreed that the business, rights and assets of the firm should become the *sole property* of Bagby, and did " *bargain, sell and deliver* " to him (Bagby) all his (the said Rivers) *right, title and interest* in and to the following property * * * pertaining to said business. * * * *Together with the good will of said firm and all business rights thereto belonging or in anywise appertaining. It being the intention of said Rivers to sell* to said Bagby his entire interest in the business as now conducted by said firm."

This grant is without reservation or restriction. By it Rivers conveyed to Bagby absolutely every interest he could possibly claim in the assets, good will and business rights of the firm, including the name " *Bagby & Rivers.*" This must be so both upon principle and authority. Bagby's testimony is clear and unequivocal, that the subject was first brought up by Rivers, and the advantages and value of the trade name were impressed upon him. The authorities agree that the transfer of the good will alone includes the firm name. Thus, " after a sale or other disposition of the good will of a partnership, the *seller has no right* to the use *of the firm name*, even *though* derived from *his own name*, nor will the selling partners be permitted to form a corporation with a name closely resembling the old firm name. The right to the use of the firm name passes with the *good will* to the purchasing partner, who then has the sole right to whatever benefit may arise from it." * * 17 *Am. & Eng. Enc. Law*, 1190. " One partner who purchases the interest of a co-partner and continues the business exclusively, is entitled to the use of the firm name." *Id.* 1191. " Again, when a partner retires not only from the firm, but from the business carried on by it, the continuing partners will acquire the benefit arising out of the good

will for nothing, unless it has been agreed that they shall pay for it; for they retain possession of the old place of business, *and they continue to carry on that business under the old name*. This, in fact, secures the good will to them, and they cannot be compelled to pay separately for it, unless some agreement to that effect has been entered into."

" The right to continue the *use of a partnership name is frequently the most important element in the good will, and is governed by principles similar to those applicable to it. The purchaser of the good will of a business acquires* the right not only to represent himself as the successor of those who formerly carried it on, but also to use the *old name* and to prevent other persons from doing the like. 1 *Lindley on Partnership* (5th ed.), 444, 445. " That the name is an important part of the good will of a business is obvious when we consider that there are at this moment large banking firms and brewing firms and others in the metropolis, which do not contain a single member of the individual names exposed in the firm." *Charton* v. *Douglas*, Johnson's Eng. Ch. 189 ; *Trego* v. *Hunt* (1896), A. C. 7 ; *Brown* v. *Dennison*, 44 N. Y. Supp. 535, 536 (1897); *Brown on Trade Marks*, sec. 524.

In *Levy* v. *Walker*, 10 Ch. Div. 436, 446, 447, 448, the Court of Appeals decided several questions involved in this case. There a Miss Charbonnel and a Miss Walker were partners, carrying on business in London under the firm name of " Charbonnel and Walker." They dissolved, Miss Charbonnel afterwards marrying Mr. Levy. The Court passed an order " that said partnership business, and the leasehold premises, trade fixtures, stock in trade, good will and business " should be sold as a going concern. Miss Walker was the purchaser under the sale made in pursuance of the above order. Due notice was given to the creditors of the firm of the dissolution, so that no liability could attach to the retiring partner. A bill having been filed against Miss Walker for an injunction to restrain her from carrying on business under the name of " Charbonnel

and Walker," the Vice-Chancellor granted her relief, but on appeal his judgment was reversed. JAMES, L. J., said: *" That the assignment* of the *good will* and business of Charbonnel and Walker *did convey the right to use the name of Charbonnel & Walker,* and the *exclusive right* to use that name as between the vendor and the purchaser of that business. Whether it would prevent another person from afterwards using the name of Charbonnel I do not say ; but the *trade name,* made up of *parts of two real names,* as the Master of the Rolls says, the *trade name of Charbonnel & Walker* (whether it was entirely a fictitious name, can make no difference) *was the name of the business,* and *that business was sold."*

All forms of personal property are assignable by the purchaser, unless the instrument of transfer expressly prohibits it; and for the very reasons mentioned by the Court below, to-wit: that the purchaser may for any one of a number of reasons be compelled to retire from business, and thus no longer be in a position to make available the good will and name for which he has perhaps, as in the case at bar, paid a large sum of money, under the supposition that the ordinary incidents and consequences of a transfer of personal property would attend the purchase. It is unjust to him to say that he shall be deprived of the right to sell, and thus make available in the only way practicable that property for which he has paid, especially when we consider that if the retiring partner objects to the use of the trade name by others, he might easily have set the matter at rest by inserting in the instrument a provision that the right to use the name should not be assignable. It could never have been in the contemplation of the parties that $8,000 should be paid for an article, the right to which, according to appellee's contention, might have terminated the next day, had Bagby suddenly died.

There is no room for argument that Bagby did not have the right to transfer to the appellant the good will, and there is no reason, save in sentiment alone, why a different rule

should be applied to the *trade name* from that applicable
to other elements of the good will.    See *Menandez* v. *Holt*,
128 U. S. 521; *Dixon Crucible Co.* v. *Guggenheimer*, 2
Brewster, 322; *Glenn & Hall Co.* v. *Hall*, 61 N. Y. 230.

In the case of *Tomah* v. *Warren*, 94 Wis. 151, the pro-
prietor of a banking business made a voluntary assignment
of all his property of every kind to an assignee for the ben-
fit of his creditors.    The assignee subsequently conveyed
the good will of the establishment, and its name to the plain-
tiff.  It was held that the latter acquired title to the name, and
might use it.    See also to the like effect *Caswell* v. *Hazard*,
121 N. Y. 484, 495–6.    The Court's attention is especially
invited to the case of the *Snyder Manufacturing Company*
v. *Snyder*, 54 Ohio State, 87 (31 L. R. A. 657), decided
by the Supreme Court of Ohio in 1896, a case similar in
every material point to that at bar.    It is there shown
that the *Horton case*, 18 Fed. Rep. 916, relied upon by the
learned Judge below, is not applicable *when the good will
has been sold by the retiring partner, and a valid transfer of
the good will and business has been made by the purchasing
partner to the corporation.*    It was held:  " Upon the disso-
lution of a trading co-partnership, its assets, including the
good-will of the business, may be sold as a whole, either
by the partners directly, or through a receiver under an
order of Court in a case to which they are parties; and a
purchaser thereof, under either method of sale, is entitled
to continue the business as the successor of the firm, and
make use of the firm name for that purpose, and when
the purchaser transfers the property so acquired by him to
a corporation of which he is a member, organized to suc-
ceed to the business, it may carry on the business in the
same manner, under a corporate name, including the name
which had been used by the firm."

It will be observed that this well-considered decision is
diametrically contrary to the view of the learned Judge
below as expressed in his opinion on the demurrer.    That
the fact that the transfer has been made to a corporation is

immaterial, see also *Monarch* v. *Rosenfeld*, 39 S. W. Rep.
236 (1897).

In this connection it should be noted that the name of
the appellant does not imply that *Arthur D.* Rivers is in
any way connected with it.    Nor can any liability whatever
attach to Rivers by reason of its use.   He was entirely sat-
isfied that Bagby should use the name " Bagby & Rivers,"
provided notice was given that he, Rivers, was no longer
connected with it.   Why should he now, with $4,000 of
Bagby's money in his pocket, and with no possibility of lia-
bility for the debts of the corporation, seek to enjoin its
use by the appellant?   Without any assignment whatever
of the name, the appellant could have lawfully adopted any
name with "Rivers" as a part of it, so far as any right of
the appellant to complain is concerned.   For he had not
been in any business for three years, and had, in addition,
divested himself absolutely of all the rights he at one time
enjoyed by his sale to Bagby.   He had no more right to
complain than any member of several families of his name
in Baltimore not related to the appellee.   See also in this
connection the case of the *Chattanooga Med. Co.* v. *Thedford
et al.*, 66 Fed. Rep. 544, where the Circuit Court of
Appeals enjoined Thedford *from the use of his own name*
because of an assignment by him of the right to use it to
his partners, which right was subsequently assigned to the
Chattanooga Medical Company.

II.  But we take it that something more than the mere
use of " Rivers" as a part of the appellant's name is nec-
essary to be shown by the appellee before he is entitled to
an injunction.   The learned Judge below was of this opin-
ion when passing upon the demurrer to the original bill,
for he says: "While the defendant [appellant] company
has no right to use the plaintiff's [appellee's] name by
virtue of the assignment from Bagby to it, yet even a right
to a man's own name is a mere abstract right, for the viola-
tion of which only nominal damages could be given at law,
and equity will not interfere by injunction unless a substan-

tial wrong is threatened." "The use of any particular name by a corporation will not be enjoined unless it be clearly proven that the complainant will suffer injury." *Cook's Stock and Stockbrokers*, Note 1, sec. 699; (1885) *Drummond Tobacco Co.* v. *Randle*, 114 Ill. 412; (1847) *London Asso.* v. *London Life Ins. Co.* 11 Jurist, 938; (1870) *Holmes* v. *Holmes Co.*, 37 Conn. 278, 295. By analogy to the rule laid down in trade-mark cases, it must be shown to the satisfaction of the Court that "irreparable injury is threatened." *Robertson* v. *Berry*, 50 Md. 597; *Parlett* v. *Guggenheimer*, 67 Md. 542; *Stonebraker* v. *Stonebraker*, 33 Md. 252.

Assuming that Rivers is in a position to complain, the proof does not support the allegations; on the contrary, the evidence is all one way that neither he nor his corporation is in the slightest degree injured, judging from the evidence of his own witnesses. The style and class of furniture manufactured by the Rivers Furniture Company, and the system of its munufacture, differ from that of the Bagby & Rivers Company, and it is more complicated. The styles and patterns are not similar. The class of goods made by the Rivers Furniture Company are superior in quality, construction and finish, having new ideas, the furniture sold itself. All that is shown is that the appellee is a member of a corporation called Rivers Furniture Company engaged in the same *general* line of business as the appellant. How is this Court to infer that purchasers are likely to be confused, especially when it is considered that the appellee's corporation has been actually engaged in business for a number of months and cannot show a single case where he has lost the sale of goods, and has not even shown any confusion in correspondence ? It is to be borne in mind, too, that the appellant is located, not at the old stand of Bagby & Rivers, but perhaps two miles away.

No trade name or trade-mark case is reported, in which an injunction was granted, unless the evidence clearly showed that confusion of names was likely to result and

consequently irreparable injury done the plaintiff. In these cases, as in others, the burden of proof is on the plaintiff. In *Richardson & Boyton Company* v. *Richardson & Morgan Company*, 8 N. Y. Supp. 53 (Supreme Court), the plaintiff was organized in 1882. Defendant *changed its name* to that given above in 1883. Both manufactured the same general line of goods. The Court say, page 53 : " In cases of this description each contains features peculiar to itself, and the right to relief depends rather on *questions of fact* than on questions of law. * * * We might indulge in speculation in reference to the likelihood of confusion arising from similarity of these names in the conduct of business. * * * But the most satisfactory evidence in reference to the results likely to follow from alleged similarity is evidence of actual cases in which such deception and imposition has occurred." (Page 54) : " There seems to be no adequate proof to sustain this proposition that confusion in the minds of customers was likely to result." The injunction was refused. The Rivers Company has been in business for a number of months, yet where is the plaintiff's evidence of cases in which such deception and imposition has occurred ?

In *Hygeia Water Ice Company* v. *New York Hygeia Water Ice Company*, 140 N. Y. 94 (1893), plaintiff adopted its name about one month prior to the defendant, and sought to enjoin the latter. The Court say : "The gravamen of the action is that the defendant has appropriated and is using a corporate name calculated to confuse and deceive the public to the plaintiff's injury. There is no finding and no satisfactory proof that the defendant by the use of the name ever deceived any one, or that any confusion as to identity was ever produced in consequence. The two corporations certainly have different names, though the word Hygeia occurs in both. But this fact would not warrant us in *assuming as matter of law* that the name adopted by the defendant has deceived the public, or is calculated to deceive them, or that any confusion with reference to the iden-

tity of the two corporations exists to the prejudice of the plaintiff in consequence of the defendant's acts. *Courts of Equity must in such cases assume that the public will use reasonable intelligence and discrimination* with reference to the names of corporations with which they are dealing and intend to deal, the same as in cases of individuals bearing the same or similar names. *It is timely enough in such cases for equity to use its extraordinary powers when it appears that deception or confusion has, in fact,* resulted from the use of a word or a name, or when it clearly appears that such result is likely to follow." In *Drummond Tobacco Company* v. *Randle et al.,* 114 Ill. 412, plaintiff sought to enjoin defendants from incorporating a company to engage in the same line of business under the similar name of Drummond-Randle Tobacco Company. The Court say: "It was incumbent on the complainant to show by such a *preponderance of evidence* as will reasonably satisfy the mind of the Chancellor that the incorporation of the Drummond-Randle Tobacco Company would so injure it as to justify the issuing of a writ of injunction. *The injury must be of a substantial character and not merely conjectural.*"

The appellant's name does not reasonably indicate that the appellee is one of its members. In the case of *Holmes, Booth & Hayden,* 37 Conn. 278, it was urged that the above name was calculated to deceive the public by causing them to believe that Holmes and Booth were members of that corporation, when the fact was that they were not, but the Court declined so to hold. In *Thorneloe* v. *Hill* [1894] I Ch. D. 574, it was said: "Now speaking generally, a purchaser of a business, if he continues it, has the right to use the trade-name or trade-marks of the business in any way he pleases which is not calculated to deceive, and in particular, as a rule, the purchaser of a business may mark goods made by him in the course of that business with the name of the vendor, although the vendor or his old workmen did not make or assist in making such goods, and by so marking the goods the purchaser would not be con-

sidered as doing that which was calculated to deceive his customers or the public."

IV. The cross-bill was filed to enjoin Rivers from violating his covenant not to resume the furniture business in Baltimore City, as such a covenant is a constituent part or attendant of the good-will, and the appellant having bought Bagby's business and the good will, now has the right to enforce the covenant as his successor. *Guerand* v. *Daudelet*, 32 Md. 561.

" The benefit of such an agreement, *since it adds value to the good-will* of the business, passes on an assignment either of the good-will or of the beneficial interest in the business ; *and the agreement may be enforced by the assignee,* although assigns are not expressly mentioned in the agreement." *Jacobi* v. *Whitmore*, 39 Law Times Rep. N. S. 335; *Palmer* v. *Toms*, 71 N. Western Rep. 654–5 (1897). See also *Diamond Match Company* v. *Roeber*, 106 N. Y. 473, 487, where the defendant sold his business, good will, etc., to the Swift, Courtney & Beecher Company and covenanted not to re-engage in the same business. The *covenantee's assignee* brought suit to enforce the covenant. The Court say, page 487 : " The plaintiff, as successor of the Swift, Courtney & Beecher Company and as assignee of the covenant, can maintain the action. * * * The covenant was in the nature of a property-right and was assignable, at least it was assignable in connection with a sale of the property and the business of the assignors." See also *Hedge* v. *Lowe*, 27 Iowa, 137, 141. Rivers' covenant not to resume business is in no way dependent on the other clause of the articles of dissolution relating to Bagby's right to use the name of Bagby & Rivers. *It is an independent clause and not connected with any other clause of the contract except as a part of the same instrument.* There is a clear distinction between *Bagby's right* to transfer to the appellant the name " Bagby & Rivers," and appellant's right, as assignee of the good will, to enjoin Rivers from violating his covenant.

*Beal* v. *Chase*, 31 Mich. 490, is just such a case as ours. Chase had sold his printing establishment and good-will, and covenanted not to resume the business. He subsequently organized a corporation to conduct the business in which he was a large stockholder, and was enjoined from so doing.   In a recent case, *Kramer* v. *Old*, 119 N. C. 1 (34 L. R. A. 389), the Supreme Court of North Carolina held, that " to take stock or help to organize a corporation formed to carry on a business after one has agreed, on the sale of such a business *not to continue it* in that locality, is a breach of his contract.   See *Emery* v. *Bradley*, 34 Atl. Rep. 167.

*Trego* v. *Hunt*, decided recently by the House of Lords [1896] A. C. 7, is very interesting and instructive in connection with the branch of the case now under consideration. It was held " where the good-will of a business is sold (without further provision) the vendor may set up a rival business, but he is not entitled to canvas the customers of the old firm, and may be restrained by injunction from soliciting any person who was a customer of the old firm prior to the sale to continue with the vendor, or not to deal with the puchaser."

Rivers' corporation bearing his name, coupled with the fact that it carries on business at the former location of Bagby & Rivers, is misleading to the public.   *Myers* v. *Kalamazoo Buggy Co.*, 54 Mich. 215 ; *Holmes, &c.*, v. *Holmes, &c., Co.*, 37 Conn. 278.   Should the agreement of Rivers, that he will not engage in the manufacture of furniture in the city of Baltimere be restricted, and construed to mean only "so long as the said Bagby shall continue said business," still appellant is entitled to an injunction, because Bagby *is still in the furniture business*, and has never quit it.

Whether or not Bagby is in business can be shown by considering the question under what circumstances would Rivers be violating his covenant, if Bagby had made no change in the form of his business.   *If one is a promoter of a corporation, and a stockholder therein*, he is violating a covenant *not to engage in business. Beal* v. *Chase*, 31 Mich.

490 ; *Emory* v. *Bradley*, 88 Me. 360 ; *Kramer* v. *Old*, 119 N. C. 1.   In construing Rivers' covenant not to engage in business, its *object* should be kept prominently in mind—to make more valuable the good will which was sold at the same time.  Good will, in such a case as the present, consists mainly of location, name, and the covenant of the retiring partner not to compete.

*Edgar H. Gans* and *Vernon Cook* (with whom were *B. H. Haman* and *Sappington & Rivers* on the brief), for the appellees.

The appellant contends that the right to use the name Bagby & Rivers belonged to Bagby under the agreement of dissolution, and in such a way that he could legally assign it to the corporation.   The appellees maintain that the right to use the name Bagby & Rivers did go to Bagby under the agreement of dissolution, but only so long as Bagby continued, individually, the old business, and that he ceased to continue the old business, individually, when he formed the corporation ; therefore, even he, no longer had any right to the name.   They maintain further that the right in Bagby to the name of Bagby & Rivers is not assignable by him to a corporation.

It has been attempted by the appellant to show that this agreement to assign, and contemporaneous assignment of the *good will*, carries with it, as part of the *good will*, the right to use the firm name.   It seems clear that this is true when the name is something more than the name of the firm or corporation carrying on the business.   When the name has been attached to or stamped on the articles sold, so as to identify them, it becomes more than a name identifying the business, it becomes a trade-mark, and will pass with the good-will.   But there are no satisfactory authorities holding that the mere sale of a good will necessarily carries the right to use the name of the vendor in carrying on the business. The vendee has the right to say "successor to A," if he buys the business from A, but has not the right to trade as

"A." This is the whole trend of the modern authorities and this policy has been adopted in many States by statute, notably in New York and Massachusetts. In *Thynne* v. *Shove*, 45 Ch. Div. 580, the Court say that the assignment of the good will carries the right to use the name of the assignee for the purpose of showing that the business was formerly carried on by the assignor." In *Levy* v. *Walker*, 10 Ch. D. 447, although James states as one ground of his decision that the assignment of the good will carries the right to use the firm name, the decision of JESSEL, M. R., was not put on this ground- There is a dictum to the same effect in *Churton* v. *Douglass*, Johns. Eng. Chanc. 174, copied in Encyclopedia of Law, page 1368, but in that case claim the was not to use the name John Douglass & Co., *simpliciter* but to refer to themselves as succeeding the former firm, by using the words, "late John Douglass & Co.', In this country it has been expressly decided that an assignment of the good will alone does not carry with it the right to use the, firm name of the assignor ; *Williams* v. *Farrand*, 88 Mich. 483 ; *Howe* v. *Searing*, 6 Bos. N. Y. 354 ; *Parsons Partnership*, sec. 182 , note.

But however this conflict of authority be reconciled, this agreement is not simply for the assignment of the good will. The question of the name is also distinctly provided for as is the question of Rivers not going into business. If A sells to B the good will of a business, there is nothing to prevent A from starting a similar business, the next day, and next door to the vendee. Any restraint upon A must be provided for by express contract. The question of name is one which may also be provided for by express contract, and when it is so provided for, it is to be decided by the express language of the contract and not upon any inference that it might possibly pass under the sale of the good will.

The parties evidently had the questions of the good will, the name, and Rivers not going into business, all in their mind, and expressly provided for each one of them. As to the name, the language of the agreement is :

"And the said Rivers hereby agrees and covenants that he will *permit* the said Bagby to continue the use of his name in the style of said firm," provided notice be given by said Bagby "as not to make said Rivers liable for or chargeable with any of the debts or contracts of said business as hereafter to be conducted by said Bagby."

As to Rivers not going in business, the agreement reads : "And the said Rivers agrees and covenants that he will not engage in the manufacture of furniture so long as said Bagby shall continue said business."

Those two provisions are to be construed together : Rivers "permits" Bagby to continue the use of his name. He does not "permit" Bagby and his executors, administrators and assigns, but Bagby.  This provision is simply to *continue* the name in the "*style of the firm.*"  It contemplates also that the business is to be conducted in such a way by Bagby as that Rivers might become liable unless a notice is given.  In order to strengthen Bagby's right, Rivers covenants that he will not go into the furniture business "so long as said Bagby continues said business."  He does not covenant that he will never thereafter go into the business, or "at any time thereafter," as in *Guerand* v. *Dandelet*, 32 Md. 564.  He does not covenant that he will not go into the business after Bagby's death, or after an assignment of the business by Bagby, or after Bagby should put the business into the hands of a corporation which is legally immortal, and in which he has simply the interest of a stockholder, which may cease at any time.

The meaning of this contract is evident.  Bagby as long as he conducted the business was to use the firm name, and during that time Rivers was not to compete with him, but when Bagby ceased individually to conduct the business as his own, then his right to use the name of Rivers ceased, and Rivers was allowed to enter the field in his own name. This construction is the only reasonable one.  Rivers might be entirely willing for his continuing partner to use his name in the prosecution of the old business, and yet might object

to the transfer to another company and especially to a cor-
poration of the right to use the name.    He might be per-
fectly willing to retire from business in favor of Bagby, and
yet not be willing to retire absolutely, whether Bagby con-
tinued in business or not.    Bagby might die, " become in-
solvent, retire from business by reason of ill health or a suf-
ficient competency, or other reasons, and whenever the con-
tinuing partner did so quit business, the retiring partner's
right to use his own name in a similar business would be at
once restored to him.    But if the continuing partner has a
right, without the consent of the retiring partner, to transfer
the latter's name to a corporation, then the latter may be
perpetually deprived of the control of it.    The continuing
partner may die, or become insolvent, or dispose of his in-
terest, or his interest may be so small that he has no voice
in the management, but the corporation will still live ; and
thus the use of the retiring partner's name may be kept away
from his own control for an indefinite time, contrary to his
wishes and beyond his intention, when he entered into the
contract ; in fact the use of his name may be placed in the
perpetual control of those to whom he might perhaps have
been the least willing to grant the use of it."

Not only this—but by the same construction, Rivers
would be prevented from ever going into business, when,
by the contract, he agreed to stay out only so long as *Bagby*
continued said business, having the chance therefore of re-
suming business again, if any of the numerous contingencies
should happen already specified.    And of course if he had
the right to resume business, he would want the use of his
own name.

The construction contended for by the appellees is not
only reasonable, and in accord with the strict construction
always given to contracts in restraint of trade, but the
reasons therefor are precisely adjudicated in the only cases
in which a similar question has ever arisen.    *Horton Mfg.
Co.* v. *Horton Mfg. Co.,* 18 Fed. Rep. 816 ; *Holmes* v.
*Holmes,* 37 Conn. 278, are directly in point, and conclusive

on this branch of the case.    See *McGowan* v. *McGowan*, 2 Cinn. Sup. Ct. 313, affirmed 22 Ohio St. 370.    It seems clear, therefore, that when Bagby ceased to do business individually, and formed a corporation, he was no longer continuing the old business, within the meaning of the contract, and was no longer entitled to use the name of Rivers, and that Rivers was relegated to his right to enter the furniture business himself.

The appellant further contends that, conceding for the purpose of the argument, that the Bagby & Rivers Company have not the right to use the name of *Rivers*, still the complainant has no case on his bill, as he has alleged no damage, and a number of cases have been cited to show that no injunction will lie unless injury be shown.    But these cases, upon examination, do not support the claim of the appellant as contended for by it.    It is undoubtedly true that there is no property in a name, *simpliciter*, but a man has a certain property right in his name *when it is connected with a business in which he is interested*.    It becomes then not an absolute right in the name, but the relative right of the name as connected with the business.

"A man's name is his own property, and he has the same right to its use and enjoyment as he has to that of any other species of property."    *Brown Chemical Co.* v. *Meyer*, 139 U. S. 544.    The true rule is that one who is in business and uses his name in connection with that business, may restrain the use of his name in a similar business by one who has no right from him so to use it.    There can be found no case which requires in the bill the statement of more than those facts to secure an injunction.    *McGowan* v. *McGowan*, 2 Cinn. Rep. 320 ; *Williams* v. *Farnand*, 88 Mich. 473 ; *Holmes* v. *Gratz*, 52 Fed. Rep. 871 ; *Brown Trade Marks*, sec. 524 *et seq.; 2 Beach, Injunction,* sec. 760 ; *Landreth* v. *Landreth*, 22 Fed. Rep. 41 ; *Holmes* v. *Holmes*, 37 Conn. 295–96. As to cases cited by appellant : In *Day v. Browning*, 10 Ch. D. 302, there was no question of a name in

trade, but as to whether a villa could be called "Ashford Lodge."

In *Thornelow* v. *Hill*, 1 Ch. Div. 1894, pages 576–7, the whole case turned on the point that a name in gross, disconnected from the business, could not be assigned. That is all that was decided. In *Hygeia Water Ice Co.* v. *New York Hygeia Co.*, 140 N. Y. 94, the contention was over a fancy name, by two corporations, incorporated a month apart; the first assuming the name not keeping up the business ; the second assuming the same name in entire ignorance of the former corporation, and spending large sums of money in business under that name. Court simply held that under all the circumstances it would in the exercise of its discretion refuse the injunction. In *Drummond Tobacco Co.* v. *Randle*, 144 Ill. 425, 433, the whole contention was not as to the right to use the name Drummond, because in each corporation there was a Drummond, but whether it was being used by the second corporation as a means of deceiving the trade, and the Court held that on the facts there was no deception, and therefore no damage done. This case belongs to the same class as the case of *Croft* v. *Day*, 7 Beav. 84. But no case is cited and none can be found where a complainant using his own name in connection with a business has been refused an injunction against one using his name in a similar business without right. In *Levy* v. *Walker*, 10 Ch. D. 447, the complainants were not in business in London, and their names were not Charbonel, but Levy.

When the bill was filed Rivers was preparing to go into business. In July he went into business by forming a corporation, of which he is practically the owner. This can makes no difference, as he is in the business in the form of a corporation. If the covenant restraining him from going into trade was in operation, he could not escape liability by showing that he had turned his business into a stock company. This differs from the point argued as to Bagby. Bagby is still, in this general sense, in the business, but not

in the sense contemplated by the contract of dissolution.
Moreover, the Rivers Furniture Company is a party to the
proceedings, made so by the cross-bill, and is now before
the Court with Mr. Rivers.   The appellant practically con-
cedes damage, for in the cross-bill filed by it against the
Rivers Furniture Company, the damage relied on is the di-
version of trade which it alleges will follow from the use of
the name Rivers in the title of the Rivers Furniture Com-
peny.  So there will be an undoubted damage to Rivers by
the continuance of his name in the Bagby & Rivers Com-
pany.   All the trade will be likely to believe that Rivers is
in this corporation, and that his skill and business manage-
ment which helped to make the old firm a success, are still
employed in behalf of the Bagby & Rivers Company.

The  covenant in restraint of trade has already been dis-
cussed.   If that contention is right Mr. Rivers had a right
to enter the furniture business again as soon as Bagby cre-
ated his stock company and assigned his business to it.
Rivers cannot  therefore be restrained from continuing the
business.    It is alleged, however, that he has been person-
ally soliciting the customers of the old business.   *We deny.*
First, that in the sale of a good will the vendor may be
legally restrained from soliciting customers.   *Williams* v.
*Farrand*, 88 Mich. 483;  *Cottrill* v. *Babcock*, 54 Conn. 122,
139.   It has been held in England in *Trego* v. *Hunt*, L. R.
App. Cas. (1896), 10, that one cannot personally solicit
customers of old firm, when he derives his knowledge as to
who were customers from his relations with the old busi-
ness.    There had been before this much contradiction
among the English authorities.   As we have seen, the
American authorities allow personal solicitation.   *We deny.*
Second, that there is any proof of solicitation.   The only
thing  done that would be at all open to argument is the
sending of catalogues, but the names of the trade are all
in Bradstreet's & Dunn's Commercial Agency Books, and
are accessible to every one.

BRISCOE, J., delivered the opinion of the Court.

This was a bill in equity, filed on the 22d of April, 1897, in the Circuit Court of Baltimore City, by the plaintiff, Arthur D. Rivers, for an injunction to enjoin the defendant, the Bagby and Rivers Company, of Baltimore City (a corporation), from using the name "Rivers" as a part of its corporate title. Subsequently, on the 13th of August, 1897, a cross-bill was filed by the defendant corporation against the plaintiff, Rivers and the Rivers Furniture Company, to restrain Rivers from conducting the furniture business in the city of Baltimore, either in his own name or in the name of the Rivers Furniture Company, and further, to enjoin the Rivers Furniture Company from using the name of Rivers, as a part of its title, in the conduct of the furniture manufacturing business.

The facts of the case are substantially as follows : The plaintiff Rivers and Charles T. Bagby had been for many years engaged in the manufacture and sale of furniture in Baltimore City, under the firm name and style of Bagby and Rivers. On the first of January, 1894, the copartnership existing between the members of this firm was dissolved by mutual agreement. The articles of dissolution were evidenced by a written agreement and a memorandum of sale. By the express terms of the agreement, it is provided that Bagby shall have and own in his own right, free and clear of any interest or claim of Rivers, all the stock, furniture, &c., in the factory and warehouse owned by the firm : and in addition thereto the good will of the firm and all business rights thereto belonging. And it further provides, that "the said Rivers hereby agrees and covenants that he will permit the said Bagby to continue the use of his name, in the style of said firm ; provided, however, it be so used, after such necessary legal notice to be given by the said Bagby, as not to make the said Rivers liable for or chargeable with any of the debts or contracts of said business as hereafter to be conducted by said Bagby." * * " And the said Rivers agrees and covenants that he will not engage in the manu-

facture of furniture in the city of Baltimore, so long as the said Bagby shall continue said business." And in the memorandum of sale, which was executed by Rivers on the same day of the agreement of dissolution, it is further provided that in addition to the assignment of the stock of goods, &c., "the good will of the firm and all business rights thereto belonging or anywise appertaining shall be sold to Charles T. Bagby. It being the intention of said Rivers to sell to Bagby his entire interest in the business as now conducted by said firm." It further appears that Bagby continued to carry on the furniture business under the firm name of Bagby and Rivers, until March 16th, 1897, when he and others formed a corporation under the general laws of this State, called "The Bagby and Rivers Company of Baltimore." He then assigned and transferred the business of Bagby and Rivers to this new company, and continued to carry on the furniture business under the name and style of the Bagby and Rivers Company.

On July 7th, 1897, the plaintiff, Arthur D. Rivers, formed a corporation called the Rivers Furniture Company of Baltimore City, and has been since that date conducting the furniture business. And from a decree enjoining the defendant, Bagby and Rivers Co., from using the name Rivers and dismissing the appellant's cross-bill, this appeal has been taken.

There can be no question, it seems to us, that under a proper construction of the articles of dissolution between the parties and the memoranda of sale, signed in execution of this agreement, that the right to use the name Bagby and Rivers was conferred upon Bagby so long as he continued the business in the style of the old firm. This was clearly the intention of the parties as will appear from the language of the agreement itself, which is, "and the said Rivers hereby agrees and covenants that he will permit the said Bagby to continue the use of his name in the style of said firm ; provided, however, it be so used, after such necessary legal notice to be given by said Bagby, as not to make the said

Rivers liable for or chargeable with any of the debts or con-
tracts of said business, as hereafter to be conducted by said
Bagby."

But the appellants contend they not only had a right to
the use of the name Bagby and Rivers so long as the old
firm existed, but they had the right to legally assign the
name Rivers to the corporation Bagby and Rivers Com-
pany.   This brings us to the main question in the case, and
that is as was stated by the Court below ; has a continuing
partner who has acquired the right to use the name of a
retiring partner, either by a grant in express terms or by
legal inference arising from the purchase of the good will
of the old firm, the right to assign the use of the retiring
partner's name to a corporation formed for the purpose of
continuing the same business ?

We are of the opinion, after a careful examination, that
the contention of the appellant in respect to the assignability
of the rights under this contract cannot be sustained, either
from the intention of the parties, as manifested by the agree-
ment itself, or by the law applicable to the case.   In the
case of *Arkansas Smelting Co.* v. *Belden Co.*, 127 U. S. 387,
MR. JUSTICE GRAY, in delivering the opinion of the Supreme
Court, says :  " Every one has a right to select and de-
termine with whom he will contract and cannot have another
thrust upon him without his consent.   In the familiar phrase
of LORD DENMAN, ' You have the right to the benefit you
anticipate from the character, credit and substance of the
party with whom you contract.' "   And in that case, the
Court adopts the rule laid down by *Pollock on Contracts*,
425.   " Rights arising out of contract cannot be transferred
if they are coupled with liabilities, or if they involve a rela-
tion of personal confidence such that the party whose agree-
ment conferred those rights must have intended them to be
exercised only by him in whom he actually confided. "

In the case of *Horton Mfg. Co.* v. *Horton Mfg. Co.*, 18
Fed. Rep. 817, a case involving the same question as
is here presented, the Court said : " There is certainly no

authority for the proposition that a partnership whose name consists in whole or in part of the name of a person who is not a member of the firm, can, without the consent of the owner, transfer the right to another company or corporation to make a like use of such name.   A man might willingly forego the use of his name in favor of an ordinary partnership, which, whether limited or not to a definite term of existence, is liable upon many contingencies to come to an end, but from such a ground there could not reasonably be inferred an intention to authorize a transfer or assignment to other companies or corporations, whereby the owner might be perpetually deprived of the control of his own name.''

We will not stop to distinguish the many cases upon this question, because it would extend this opinion to an unusual length, but will simply state the conclusion reached by the Courts on the subject.   It is this : Where the contract is for the sale of or the right to use a fictitious name, or a trade-name or a trade-mark, or a corporate name, though composed of individual names, or where the good will of a business includes the right to use names of that character, then such right is assignable by the purchaser and follows the business.   But where the contract merely gives to one person the right to use the name of another, as in this case, such right is personal, and in the absence of an express stipulation, cannot be assigned or transferred by the purchaser to a third party.   In this case it was stipulated that Bagby should have the right to continue the business under the old name of Bagby & Rivers.   It was not agreed that Bagby and his executors, administrators or assigns or a corporation, but in the language of the contract, '' he will permit the said *Bagby* to *continue* the use of his name in the style of the firm.''   If more had been desired it should have been agreed upon and expressed in the contract.   This Court cannot infer from the language used, that Bagby was entitled to transfer to a corporation the right which Rivers had conferred upon him personally.   On the

contrary, we think, the meaning of the contract between the parties is, that so long as Bagby continued to conduct the business in the firm name of Bagby & Rivers he had the right to use the name Rivers, but when this stopped the right to use the name of Rivers also ceased.

We come, then, to the second proposition relied upon by the appellants, and that is the right of the appellees to an injunction. This is resisted upon the ground that no damage has been alleged and no injunction will lie unless injury has been shown. In the case of *Plant Seed Co.* v. *Michel Plant and Seed Co.* 37 Mo. App. 313, it is said that when a person or business corporation has assumed the name of some other firm or corporation in the same line of business or has adopted a name which so closely resembles that of a business rival previously established that the business of the latter is liable to be diverted and the public deceived on account of it, it has always been recognized as within the power or jurisdiction of a Court of Equity to restrain such person or new company from conducting business under the name assumed to the detriment of the older company. And in *Du Boulay* v. *Du Boulay*, 2 L. R. P. C. 441, this question is thus determined : " In this country we do not recognize the absolute right of a person to a particular name to the extent of entitling him to prevent the assumption of that name by a stranger. The right to the exclusive use of a name in connection with a trade. or business is familiar to our law, and any person using that name after a relative right of this description has been acquired by another is considered to have been guilty of a fraud, or at least, an invasion of another's right, and renders himself liable to an action, or he may be restrained from the use of the name by injunction." And to the like effect are the cases of *McGowan* v. *McGowan*, 2 Cinn. Rep. 320 ; *Williams* v. *Farnand*, 88 Mich. 473 ; *Holmes* v. *Gratz*, 52 Fed. Rep. 871; *Landreth* v. *Landreth*, 22 Fed. Rep. 41; *Holmes* v. *Holmes*, 37 Conn. 295 ; *Beach on Injunction*, sec. 760 ; *Brown Chemical Co.* v. *Meyer*, 139 U. S. 544. There was

no error then in the decree enjoining the Bagby and Rivers Company from using the name Rivers as part of the corporate name of the corporation.

The remaining contention urged by the appellants arises under the cross-bill, which was dismissed by the Court below, and involves a construction of that part of the agreement which reads, " and the said Rivers agrees and covenants that he will not engage in the manufacture of furniture so long as said Bagby shall continue said business."

It is clear, we think, according to the meaning of this part of the contract, that when Bagby formed a corporation, assigned to it all the rights of the old firm and ceased to do business as Bagby and Rivers, he was not conducting and continuing the old business, and that Rivers was entitled to resume the furniture business himself.  We fully agree with the learned Court below, when it says, "that under the provisions of the contract Rivers has a full right to engage in the business, if Bagby quits it, and I do not see how it can well be contended, that if Bagby abandons the business himself as an individual and transfers all his rights to the defendant corporation, assuming to assign to it also the late firm name, that Bagby can still be considered as conducting a business which is absolutely that of the corporation to which he has transferred it.  It is no longer Bagby who is doing the business but the corporation, no matter if he does have an interest in the latter."  For these reasons the decree will be affirmed.

*Decree affirmed with costs.*

(Decided April 1st, 1898).