# WILLIAM H. MARCUS *v.* WILLIAM A. McFARLAND.

*Firm names: sale or transfer; when assignable by transferee.*

The right to use a fictitious name, a trade name, or trademark, or a corporate name composed of individual names, or the good will of a business where it includes the right to use names of that character, is assignable by the purchaser and passes with the business.                    p. 277

But if a contract merely gives one person the right to use the name of another, such right is personal, and in the absence of express stipulation to that effect, can not be assigned or transferred by the purchaser to a third party.            p. 278

For several years a partnership and business had been conducted under the name of H. M. & Son, although H. M. had long been dead and different sons of his had at different times composed the firm; at a time when the firm had consisted of W. M., one of the sons, and W. A. McF., it had been dissolved, and W. M. granted and assigned to W. A. McF. the good will of the business "hitherto carried on by said M. & McF. under the firm name of H. M. & Son, together with the right to use said firm name"; and afterwards W. M. again entered the firm under the same firm name; subsequently the relation was again severed, each partner receiving half the profits and assuming half the liabilities; there was no assignment or transfer of the good will. W. M. sought by injunction to restrain W. A. McF. from continuing the business under the said name of H. M. & Son; on appeal from an order refusing the injunction, it was *held,* that the injunction was properly refused, as the name should be considered as a fictitious one, and one which was assignable by McF. and under which he might associate with himself a third party.                    p. 278

*Decided January 14th, 1913.*

Appeal from the Circuit Court of Baltimore City (HARLAN, C. J.).

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BRISCOE, PEARCE, THOMAS, PATTISON and STOCKBRIDGE, JJ.

*Joseph N. Ulman* (with whom were *Samuel J. Harman, Charles H. Knapp* and *Clarence A. Tucker,* on the brief), for the appellant.

*George R. Willis* (with a brief by *Willis & Willis*), for the appellee.

PATTISON, J., delivered the opinion of the Court.

The appellee, William H. Marcus, plaintiff below, filed a bill in the Circuit Court for Baltimore City, alleging that on the 6th day of May, 1909, he entered into a co-partnership with the appellee, William A. McFarland, defendant below, under the firm name of Henry Marcus & Son, to carry on and conduct the wool business in the City of Baltimore for the period of five years, commencing on the 21st day of May, 1909. That pursuant to the terms of said agreement of co-partnership, they conducted said business until on or about the 2nd day of January, 1912, when an agreement was reached "dissolving said co-partnership and providing for a settlement of its affairs as of the first day of May, 1912."

The bill further alleges that in December, 1911, while the partnership agreement was in full force and effect, the defendant, without the knowledge of the plaintiff and without notice to such plaintiff of his contemplated withdrawal from said firm, communicated in writing with the purchasing agents of said firm, advising them that at the end of the business year, to wit, April 30th, 1912, there would be a change in the personnel of the partnership, and requested such persons to refrain from entering into any contract or contracts covering transactions of the next year, beginning May 1st, 1912, until he, the said defendant, should have an opportunity to confer with them further.

The bill also alleges that it is the design and purpose of the said defendant, William A. McFarland, to enter into the

wool business, either on his own account or in conjunction with other person or persons unknown to the plaintiff, after the first day of May, 1912, under the firm name of Henry Marcus & Son, and that the defendant was at the time of the filing of the bill engaged in making contracts with wool buyers, to take effect after the first day of May, 1912, under such firm name of Henry Marcus & Son.

The bill further alleges that the said firm name of *Henry Marcus & Son* has become extensively and favorably known in the wool trade, and the use of said name is of large value in the successful prosecution of the wool business. And that its value consists not only in the fact that it is well and favorably known to purchasers and consumers of wool, but that it is also well and favorably known to wool buyers, men of skill and special ability, whose judgment and services are of great value in the prosecution of the wool business, and that many of said buyers have not come in personal contact with either member of the firm of Henry Marcus & Son, but have dealt with such firm either by correspondence or through its agents in the field, or both, and know said firm as an entity under said firm name of Henry Marcus & Son, and in no other way.

The bill then charges that the acts of said defendant in making the contracts with the wool buyers under the firm name of Henry Marcus & Son, and the continuation of the business by him under such firm name, after the first day of May, 1912, are parts of a fraudulent and wrongful scheme cunningly devised by the defendant McFarland "to mislead the said wool buyers into the belief that they are simply renewing their contractual obligations with the present existing firm of Henry Marcus & Son, and unless restrained and prevented, will work great loss to the plaintiff.

The prayer of the bill asks "that the defendant, his agents and servants, be enjoined and restrained, with reference to the business to be effected after May 1st, 1912, from the use of the name of Henry Marcus & Son in the making of contracts or the securing or attempted securing of such busi-

ness in that name, whether on his account or in conjunction with any other person or persons whatsoever, directly or indirectly."

The defendant in his answer filed thereto denies that he communicated with any of the purchasing agents of the firm prior to the 2nd day of January, 1912, the day upon which the agreement for the dissolution of the co-partnership was entered into by and between the plaintiff and defendant, and that not until after such agreement had been reached did he communicate with any of the purchasing agents of the said firm. And we may add that there is no testimony in the case that supports the allegation of the bill that the defendant did, prior to such time, communicate with any purchasing agents of said firm, as charged in the bill.

The answer charges that the plaintiff assumed obligations, in violation of the express provisions of the said co-partnership, and also failed to give his time and attention to the business of the firm, as covenanted by him in the agreement of co-partnership, and as a result thereof the defendant could not, without the concurrence and assistance of his co-partner, perform the duties that devolved upon him. It was therefore agreed between them that the firm should be dissolved as of the first day of May, 1912, and, as stated in the answer, each of the parties were to be "entitled to participate equally in the profits of the business and be entitled to such capital contributed to the business of the firm as may be evidenced and shown by the books of account on the first day of May, 1912, and each of them liable equally for any losses which the business may have sustained on that day."

The answer and evidence disclose these additional facts: That for a number of years prior to 1876 Henry Marcus was engaged in the wool business in the City of Baltimore, and in that year he formed a co-partnership with his son, William Marcus, the plaintiff, under the firm name of Henry Marcus & Son. That a short time thereafter Samuel, another son of Henry Marcus, was taken into the firm, but in 1890 he retired therefrom and Sigmund, another son of

Henry Marcus, became a member thereof; he remained in the firm until he died in 1897. At this time Samuel was again taken into the firm, and he with the plaintiff conducted the business until 1900 or 1901. The evidence is silent as to when Henry Marcus, the father, ceased to be a member of the firm, that is, whether he retired at the death of his son Sigmund or prior thereto. In 1900 or 1901 both Samuel and the plaintiff retired from the firm, and the business of the firm was thereafter conducted by their brother Julius and the defendant, William A. McFarland, until 1903, when Julius retired from the firm and the plaintiff again became a member thereof, and he with the defendant conducted the business until 1906. In that year, on the 30th of April, the plaintiff conveyed unto the defendant all his interest in the real and leasehold property held by them in the City of Baltimore, and in writing agreed that the said McFarland should continue said business on his own account, and he, in said written agreement, "granted and assigned to the said William A. McFarland the good-will of the business heretofore carried on by the said Marcus and McFarland under the firm name of Henry Marcus & Son, *together with the right to use said firm name.*" The plaintiff again retired from the firm. The business, so far as the record discloses, was thereafter, until May, 1909, conducted by the defendant alone, when the plaintiff again entered the firm, and he together with the defendant conducted said business until its dissolution in 1912. During the whole period from 1876, when the firm of Henry Marcus & Son was first formed, to the time of the dissolution of the firm of William Marcus and William A. McFarland, in 1912, the firm name under which the business was conducted was that of *Henry Marcus & Son,* notwithstanding the many changes in the membership of the firm to which it had been subjected. The plaintiff in this period had three times entered and retired from the firm, and for a part of this time no member of the Marcus family was a member of the firm, during such time the defendant, William A. McFarland, conducted the said business alone.

By the co-partnership agreement entered into by and between the plaintiff and defendant in 1909, the partnership thus formed was to continue for five years, commencing on the first day of May, 1909, and ending on the 30th day of April, 1914. The dissolution came in 1912. By the agreement of dissolution each of the partners was to participate equally in the profits of the business to the first day of May, 1912, and each was to be equally liable for the losses to such date, and each was to be entitled to such capital contribution to the business of the firm as evidenced and shown by its books of account on the first day of May, 1912. There was no purchase made by one partner of the interest of the other in the property or assets of the firm, nor was there any assignment or transfer of the good-will of the firm.

As it is expressed by the plaintiff in his testimony, the business was liquidated every year. This he explained by saying that by the first day of May in each year all the stock was usually sold and the accounts receivable were usually in, and thus a dissolution was easily effected.

After the agreement of dissolution, the plaintiff presented to the defendant, to be signed by him, an agreement of dissolution, in which appears, among other provisions, the following, to wit: "The said William Marcus shall have the sole right to continue the business of Henry Marcus & Son under the firm name. The said William McFarland shall have the right to engage in and conduct the same line of business under a different name and at a different location." The defendant declined to sign the agreement containing this provision, and thus no agreement of dissolution in writing was signed by them.

The learned Court below, Judge Harlan, to whom the case was submitted, denied the application for injunction and dismissed the bill of complaint. It is from that order that this appeal is taken.

The defendant contends that under and by virtue of the said assignment to him, of April 30th, 1906, he acquired the good-will of said business, together with the right to use the

firm name of Henry Marcus & Son, and that the partnership thereafter formed with William H. Marcus on the 30th day of April, 1909, did not divest him of this right, but the effect of which was only to permit, in the nature of a loan, the use of said firm name by the newly constituted partnership for the time mentioned in the said agreement, or until its dissolution at an eariler date, and that after the expiration of the term of such co-partnership, or at its dissolution, the right so acquired by the defendant to use said firm name still remained in him. The plaintiff, on the other hand, contends that although the defendant under the contract of dissolution of 1906, acquired the right to use said firm name, nevertheless under the agreement made with the plaintiff in 1909, by the terms of which the plaintiff and defendant were to trade under the firm name of Henry Marcus & Son, the right so acquired by the defendant, under said agreement, to use said firm name of Henry Marcus & Son became the property of the new firm, and that upon its dissolution the right to use said firm name did not exist with the defendant.

The contention thus arises from the effect to be given to the use of the firm name of Henry Marcus & Son by the newly constituted firm.

It was clearly within the power of the plaintiff, upon the dissolution of the firm in 1906, to sell and assign unto the defendant the good-will of the firm, together with the right to use the firm name, and under said agreement the defendant acquired a valuable right, a right that could be exercised by him to the exclusion of the plaintiff until by some act of his this right was lost to him. *Lindley on Partnership,* Vol. 2, sec. 445; *Levy* v. *Walker,* L. R. 10 Chancy. Div. 436.

In the case of *Citizens' Fire Insurance, Security and Land Co.* v. *Doll,* 35 Md. 106, where the point there made was whether or not certain properties had been contributed by an individual member of the firm to the capital of the firm, JUDGE ALVEY, in speaking for the Court, said: "It was not necessary to put the property itself into the common stock; the capital, in part, could well consist of the mere use of the

property owned by one of the individual members of the firm. In such case, the title, both legal and equitable, remains in the individual member, subject to the particular use and appropriation, during the continuance of the partnership, and upon its dissolution, the property is freed of such use. There is no partnership of the property itself, and the only interest that the members of the partnership, other than the real owner, have in it, is the temporary use and employment of it. *Champion* v. *Bostwick,* 18 Wend. 183; *French* v. *Styring,* 2 C. B. (N. S.) 357; *Parsons on Part.,* 44, 48, 55, in notes. * * * The property itself was not intended to be made partnership property, but only in use."

"Whether personal property which is owned by one of the partners, when the partnership is formed and which is used thereafter for the firm's purposes, has been contributed to the firm's capital and has thus become the firm property, or remains the individual property of the said partner, is to be determined by the *partnership agreement and conduct of the parties thereunder.*" 30 *Cyc.* 426.

Applying this rule, we are to ascertain whether or not this valuable right of the defendant to use the firm name of Henry Marcus & Son became the property of the newly created firm, because of the formation of such new firm and the right extended to it to use said firm name for the period stipulated in the agreement, or until sooner dissolved.

The agreement of co-partnership of May 6th, 1909, contains no express provision by which the plaintiff disposes of this valuable right to the firm thereby created, nor do we find it in the annual inventories of the property and assets of the firm thereafter made; nor is it shown that it was carried upon the books of the firm as an asset or property of the firm. No reference is anywhere made as to the disposition or use of such firm name upon the expiration of the period of such co-partnership. In the dissolution of 1912, as we have said, nothing is said effecting the rights of the defendant as to the use of the name thereafter, if at such time the right was vested in him. The paper presented to

the defendant by the plaintiff and which he was asked to sign contained a provision by which the right to use the said firm name was to be given to the plaintiff, but this the defendant refused to sign.

By the application of the rule stated above, we find nowhere in the partnership agreement or in the conduct of the defendant anything to indicate that it was his intention to divest himself of this right and to contribute it to the capital of the firm. The right to use the firm name at the time of the formation of the co-partnership of 1909 is not questioned, and this right remained in him, subject only to the permission granted by him to the new firm to use it during the period of such co-partnership and no longer.

But it is contended by the plaintiff that if the right to use the firm name of Henry Marcus & Son remained in William A. McFarland, the defendant, at the dissolution of the co-partnership in 1912, that such right was personal and could not be exercised by him when trading with his son, as was shown by the evidence to be his intention or purpose. In support of this contention our attention is called to the case of *Bagby & Rivers Company* v. *Rivers,* 87 Md. 400. In that case the authority given by Rivers, the retiring partner of the firm of Bagby & Rivers, to Bagby, was in this language: "And the said Rivers hereby agrees and consents that he will permit the said Bagby to continue the use of his name in the style of said firm; provided, however, it be so used after such legal notice to be given by said Bagby, as not to make the said Rivers liable for or chargeable with any of the debts or contracts of said business, as hereafter to be conducted by said Bagby." The Court in discussing that case said: "Where the contract is for the sale of or the right to use a fictitious name or a trade name or a trade mark, or a corporate name, though composed of individual names, or where the good-will of a business includes the right to use names of that character, then such right is assignable by the purchaser and follows the business. But where the contract merely gives to one person the right to use the name of an-

other, as in this case, such right is personal, and in the absence of an express stipulation, cannot be assigned or transferred by the purchaser to a third party. In this case it was stipulated that Bagby should have the right to continue the business under the old name of Bagby & Rivers. It was not agreed that Bagby and his executors, administrators or assigns or a corporation, but in the language of the contract, 'he will permit the said Bagby to continue the use of his name in the style of the firm.' "

In effect, we think this case falls within the first class of cases mentioned by JUDGE BRISCOE in delivering the opinion of this Court in that case. The only individual name appearing in the firm name of Henry Marcus & Son is that of Henry Marcus, who ceased to be a member of the firm many years ago and whose death occurred a number of years ago. At different times during the existence of said firm name, other sons of Henry Marcus were members of said firm and at times when William Marcus was not a member thereof. The firm name, however, remained unchanged, notwithstanding the many changes in its membership that frequently occurred from time to time during its existence, and notwithstanding, too, that the *son,* William Marcus, was at three separate periods of time not a member of said firm. It is not a case where he permitted *his name* to be used, as was the case in *Bagby & Rivers Company* v. *Rivers.* From the facts and circumstances of its use, as we have stated them, the firm name, in its legal effect at least, may be regarded as a fictitious name, as expressed by the learned Court below, and therefore the defendant should not be restrained from associating with him his son in the conduct of the business under the said firm name of Henry Marcus & Son. We therefore find that the learned Court below committed no error in refusing the injunction asked for and in dismissing the bill. We will therefore affirm the order appealed from.

*Order or decree affirmed, with costs to the appellee.*