### BENEVOLENT & PROTECTIVE ORDER OF ELKS v. IMPROVED BENEVOLENT & PROTECTIVE ORDER OF ELKS OF THE WORLD et al.

(Supreme Court, Special Term, Westchester County. July 18, 1908.)

BENEFICIAL ASSOCIATIONS—NAMES, SEALS, AND BY-LAWS—IMITATION—INJUNCTION.

Subsequent to the incorporation of a secret order under the name of "Benevolent & Protective Order of Elks," other persons, with knowledge of the former incorporation, formed a corporation under the name of the "Grand Lodge of the Improved Benevolent & Protective Order of Elks of the World," and a subordinate lodge under the name of "Improved

Benevolent & Protective Order of the Elks of the World." The latter corporation practically appropriated the name, title, seal, membership cards, emblems, and colors, and nearly everything else used by the former in conducting its corporate affairs. *Held*, that since, under Laws 1890, p. 1061, c. 563, § 4, prohibiting the filing of a certificate of a proposed corporation having the same name as another existing corporation, or so near so as to deceive, the latter corporation should not have become incorporated under the name it did, the former was entitled to injunctive relief, and the fact that the business affected by the imitation was not of a commercial or trading character did not affect the right to the relief.

Action by the Benevolent & Protective Order of Elks against the Improved Benevolent & Protective Order of Elks of the World and another to restrain the imitation of the former by the latter in the use of its name, by-laws, etc. Relief granted.

Brennen & Curran, for plaintiff.

Rufus Lewis Perry (Judson Douglas Wetmore, J. Frank Weaton, and J. W. Brown, of counsel), for defendants.

MORSCHAUSER, J. The plaintiff and defendants are secret and fraternal organizations; the purposes and objects of each being in many respects similar to those of the other. The plaintiff existed and was incorporated prior to the existence and incorporation of the defendants. The plaintiff seeks to enjoin the defendants from the use of the name and title of the "Grand Lodge of the Improved Benevolent & Protective Order of Elks of the World," or the "Improved Benevolent & Protective Order of Elks of the World," or any title or name similar or identical thereunto, or a colorable imitation thereof, derived therefrom, or in any way used as part of the title of the corporation, or the words "Elk" or "Elks," or the initials "B. P. O. E." The plaintiff furthermore seeks to enjoin the defendants from using the seal of the plaintiff, or a seal similar or identical, and also seeks to enjoin the defendants from using the membership card identical with that of the plaintiff, or similar thereto, and also from using the name and title of the officers of the plaintiff, and also the use of its emblem.

The defendants' order has no limitation as to color of the individual seeking membership, but it is formed mostly of colored persons; while to become a member of plaintiff order one must be a white male citizen of legal age of the United States of America. This provision as to color was mentioned and discussed upon the trial; but I do not understand what part it has in this case to determine the legal rights or privileges of the plaintiff and defendants' corporations. The plaintiff was incorporated, and it adopted the name of the "Benevolent & Protective Order of Elks," and the defendants are known as the "Grand Lodge of the Improved Benevolent & Protective Order of Elks of the World" and the "Improved Benevolent & Protective Order of Elks of the World." The latter defendant is a subordinate lodge, incorporated, and is under the jurisdiction of the Grand Lodge mentioned. After the incorporation of the defendants' corporation, it adopted and used as an emblem the elk head, worn by its various members, which emblem is similar to that heretofore adopted and used by the

plaintiff and its members. The defendants imitated and copied, and used, a seal similar to that used by the plaintiff's corporation, and the titles of the different officers of defendants were the same as those of the plaintiff and in imitation of the plaintiff. Defendants' corporation used and imitated the membership card of the plaintiff, as well as its membership colors. The constitution and by-laws were similar to those of plaintiff. It used the similar sign of recognition, and used the alleged secret grip of the plaintiff.

Defendants seem to have practically appropriated the name, title, seal, card, emblem, and colors, and nearly everything else used by the plaintiff in conducting its corporate affairs. On different occasions heretofore there have been instances when members of the defendants' order would approach members of plaintiff's order wearing an emblem similar to that adopted by the plaintiff, and attempting to give to some of plaintiff's members the secret sign of recognition, and pretending to be members of plaintiff's order. It was not necessary that actual deception should be shown. The liability to deception is sufficient. The plaintiff's existence and affairs were and are threatened, and there is imminent danger that the objects and purposes for which it was incorporated will be interfered with. The plaintiff had the prior right in the premises, and the defendants have assumed the name and title which is substantially that of the plaintiff, and to permit the defendants to continue the use of the name and title of the plaintiff would injuriously affect the plaintiff corporation. The defendants well knew of the plaintiff's incorporation at the time of the application for their incorporation.

The right to injunctive relief from the improper use of a corporate name is not limited to cases in which the business alleged to be affected is of a commercial or trading character. Society of the War of 1812 v. Society of the War of 1812 of the State of New York, 46 App. Div. 568, 62 N. Y. Supp. 355. Said Judge Patterson, writing the opinion in that case, at page 572 of 46 App. Div., and pages 357, 358, of 62 N. Y. Supp:

"It is said with respect to corporate names that the same rule applies as to names of firms or individuals, and an injunction lies to restrain the simulation and use by one corporation of the name of a prior corporation, where it tends to create confusion and to enable a later corporation to obtain, by reason of the similarity of names, the business of the prior one. The right to injunctive relief depends upon the use by one party of a name or corporate designation of another, so as to interfere with its business, whatever it may be. * * * not necessarily a commercial or trading business. This results from the fact that many corporations are created under the laws of this state which have nothing to do with trade or commerce. As they are authorized by and are the creatures of the law, it would be a strange condition if the law could not protect them in that which it has encouraged them to do. It is the policy of the state of New York, embodied in its statutes, to allow the incorporation of such societies as the plaintiff and the defendant. That policy was proclaimed, if not inaugurated, by the enactment of the statute of 1875, under which a multitude of corporations of various kinds, which are in no way commercial or trading corporations or societies constituted for profit, have been organized. It was part of the policy of the law to secure such corporations immunity from rival societies assuming the same corporate name. The sixth section of the act of 1875, p. 266, c. 267, under which the plaintiff was incorporated, forbade any corporation formed under it from using a

name or style the same as that of any previously existing incorporated society in this state, and the general corporation law of 1890 enacts, with respect to corporate names, that no certificate of incorporation of a proposed corporation, having the same name as an existing domestic corporation, or a name so nearly resembling it as to be calculated to deceive, shall be filed or recorded in any office for the purpose of affecting its incorporation. Here there is a declared purpose of preventing confusion and conflict between societies, arising out of identity or similarity of names. It is very easy to see how the operations of one society would be crippled by the other, and especially in a case like this, where the words superadded to the defendants' title are nothing more than descriptive of the plaintiff. Here are two societies, both corporations of the state of New York, and both known to be such, and that one may readily be mistaken for the other is quite apparent."

The defendants should not have become incorporated under the name and title set forth in the certificates of incorporation. It came within the prohibition of section 4, c. 563, p. 1061, Laws of 1890, which is as follows:

"No certificate of a proposed corporation shall be filed or recorded, having the same name as an existing domestic corporation, or a name so nearly resembling is as to be calculated to deceive. * * * "

The purposes and objects for which plaintiff was incorporated would be materially affected, or perhaps destroyed, if any set of individuals could form a corporation, appropriate its name and title, or use a similar name and title, and then conduct the affairs of such new corporation in the same manner, using the similar emblem, colors, signs, and such other things theretofore adopted by such prior existing corporation. Such acts and conduct must of itself produce confusion and affect injuriously such prior existing corporation. In business of a commercial or trading character this injunctive relief has been frequently sought and granted, and I need not cite the numerous cases to show to what extent the courts have guarded and protected the rights and privileges of such corporations or individuals.

In furtherance of justice, the plaintiff is entitled to the relief asked for in the complaint, with costs.