## THE AFRO-AMERICAN ORDER OF OWLS, BALTI-
## MORE NEST NUMBER ONE, A BODY
### CORPORATE,

*vs.*

## JOHN W. TALBOT, GEORGE D. BEROTH AND
## CHESTER B. CRUMPACKER,

*Unfair competition in trade names and symbols.*

A beneficial secret society was organized in Indiana in 1904, with the name "Order of Owls," with subordinate bodies in different States which were given the name of "Nests"; by the terms of the constitution of the organization, persons of African descent were not eligible to membership. In 1911 a corporation was formed in the State of Maryland by colored people under the name "Afro-American Order of Owls, Baltimore Nest No. 1." As soon as the Indiana organization heard of the Maryland corporation, it filed a bill for an injunction to enjoin such corporation from using the name Afro-American Order of Owls, etc., as the name, and from using any name of

which the name "Order of Owls" formed a part, and for other and further relief. *Held*: that the evidence did not show any intention to mislead, in the organization of the Maryland corporation; that the evidence did not show that anyone in fact had been misled by the similarity in title; and that the organization of the Maryland corporation did not appear to have operated to the detriment of the complainant, whose reports showed an increased membership.        p. 473

It was further *Held* that there was no evidence that the defendants or their agents ever used the name without the words "Afro-American," and it was *Held* that the use of the name should not be enjoined.        p. 473

But as the symbol of the original order consisted of the figures of three owls upon a branch or rod, and as the defendant corporation had a similar device, with the addition of the letters "A. A." above, and the letters "O. O. O." below, the figures of the owls, such device of the Maryland corporation *was held* misleading, and *it was further held* that the Maryland corporation and its officers, agents and servants should be enjoined from using any such symbol or modification thereof, as might be determined a misleading imitation of it.        p. 474

In all cases where unfair competition in trade is alleged as a ground for equitable relief, the test is whether the public has been misled by a similarity of name, style of package or representations, so that an ordinarily careful person, desiring to procure an article of given make or manufacture, would be deceived by such similarity into taking the competing article or preparation.        p. 469

*Decided June 24th, 1914.*

Appeal from the Circuit Court of Baltimore City. (Duffy, J.)

The cause was argued before Boyd, C. J., Burke, Thomas. Pattison, Urner, Stockbridge and Constable, JJ.

*W. Ashbie Hawkins* (with whom was *George W. F. Mc-Mechen* on the brief), for the appellant.

*Carlyle Barton* (with whom was *Randolph Barton* on the brief), for the appellee.

STOCKBRIDGE, J., delivered the opinion of the Court.

On the 20th November, 1904, there was organized in the City of South Bend, Indiana, a beneficial secret society, which adopted the name of "Order of Owls." A form of organization or government was then agreed upon under which the organization has continued to the present time, but the order has never been incorporated. It established in various States and places subordinate bodies, to which were given the name "Nests." prefixed with the number of the Nest, while the parent organization was known as the Home Nest. Several of these subordinate Nests were established in the State of Maryland. By the terms of its constitution the qualifications for membership were, "Any person *not of African descent* and who is over sixteen years of age is eligible to membership herein. Any Nest may raise the age of eligibility to that Nest." The membership of the organization has grown from the time of its foundation until at the latest date for which definite figures appear in the record the order contained 78,861 members.

On the 14th March, 1911, there was formed under the General Laws of this State a corporation under the name of the "Afro-American Order of Owls, Baltimore Nest No. 1." The purpose of the organization was declared in the certificate to be "The paying exclusively sick and funeral or death benefits or dependents."

On November 11th, 1912, the Afro-American Owls gave a ball at the New Good Hope Hall on Lexington Street, in the City of Baltimore, and a month and a day later the bill of complaint in this case was filed to enjoin the defendant

corporation from using the name "Afro-American Order of Owls" as a name of a fraternal, benevolent order, and from using any name of which the name "Order of Owls" forms a part, or using the words "Order of Owls" for any purpose, whether alone or in conjunction with any other words, and for such other and further relief, as their case, or the case of any of them, might require.

Testimony was taken to prove the allegations of the bill as to the organization of the order, its objects and the size of its membership, and also that it was not until about the time of the giving of the ball before mentioned, that the Indiana Order of Owls, or their members in the City of Baltimore had any knowledge whatever of the existence of the Afro-American body using in part the same name. This last evidence was of course given to avoid the possibility of a successful defense on the ground of laches, and as the evidence in this respect is entirely uncontradicted it must be taken as true, and since it is so to be regarded, the plaintiffs cannot be accused of laches when their suit was instituted less than sixty days after the knowledge of the supposed imitation of their name was first brought to their attention. The evidence on behalf of the defendants was directed to two points: First, that at the time of the incorporation and down to or shortly before the filing of the bill of complaint, they were in ignorance of the existence of the other Order of Owls. The purpose of this was manifestly to prove their good faith in the formation and conduct of their organization, nor is any evidence offered to contradict this, except such as may result inferentially from the symbol or emblem of the two bodies. This symbol is not identical. In the case of the voluntary association it consists of three owls in a sitting posture upon the limb of a tree which runs horizontally and contains a few twigs at one end, and upon the breast of each owl appears what is described by the witnesses as the letter "O." In the case of the Afro-American body three owls seated on a horizontal bar are also used, with the

letters AA above, and beneath, the letters O. O. O. The chief point of similarity in the symbol is the identity in the number of birds, and their general position. Under such a condition of facts and proof, the case must necessarily be determined by the rule of law, and the briefs of counsel abound with citations from, and references to, adjudicated cases of unfair competition. In all cases where unfair competition is alleged, the test of whether the party applying for the injunction is entitled to the relief sought is whether the public has been misled by a similarity of name, style of package or representations so that an ordinarily careful person desiring to procure an article of given make or manufacture would, by such similarity, be deceived into taking the competing article or preparation, or firm or corporation producing the same.

How far the cases relating to unfair competition are necessarily controlling of a case like the present may be a doubtful question, for different Courts seem to have regarded it differently; but there are a sufficient number of cases which have arisen growing out of a supposed imitation of name in organizations similar to those litigant here, that it is possible from them to deduce something in the nature of a guide for the present case, and reference will be made, therefore, chiefly to cases of this character.

In some States, statutes have been passed under which it is forbidden to the State authorities to grant incorporation to those applying for it, in cases where the name proposed is so similar to one in use by an existing corporation, or even voluntary association, as to tend to mislead the public. So in the case of *The Society of the War of 1812* v. *The Society of the War of 1812 of New York,* 62 N. Y. Supp. 355, the injunction was granted, because of the liability, that the public might be misled by the similarity of the name, and because of the existence of a statute, under which the Court seemed to be of opinion that the incorporation should never have been granted. And this same principle

was further emphasized in *The Benevolent and Protective Order of Elks* v. *The Improved Benevolent and Protective Order of Elks,* 111 N. Y. Supp. 1067. The direct question which is here presented was before the Supreme Court of Tennessee in *The Benevolent and Protective Order of Elks* v. *The Improved Benevolent and Protective Order of Elks,* 118 S. W. 389, in which case the most noticeable improvement was, that the Improved Order was for persons of African descent, when the original order excluded that class. In deciding it, the Court said: "While the complainant was not engaged in business for profit in the sense of commerce and trade, yet it employed certain business activities for the purpose of maintaining itself, and to procure funds to carry out the purpose of its organization, and it maintained certain business institutions, its Club Houses and its Home for Aged and Invalid Members. The name it had acquired and appropriated had become very valuable in the nature of a trade name." And upon this ground an injunction was issued against the supposed Improved Order. The extreme case sustaining the right of injunction in such cases is the *Knights of Maccabees of the World* v. *Searle,* decided by the Supreme Court of Nebraska, and reported in 106 N. W. 448. In that case the plaintiffs had been incorporated under the above title, and the defendants were making application to incorporate as "The Western Maccabees." They were sought to be enjoined from using the words "Maccabees" as any part of their name, and the injunction was granted, not upon the ground that anybody had been misled, but because in the view of the Court it might mislead the public, the Court saying: "It is sufficient to allege and prove that there would be a tendency to mislead the public. The statute requires such tendency to be avoided. It was not necessary for the plaintiffs to allege and prove that the public would be misled by the use of a part of the plaintiff's name in the way proposed."

A similar question to the one here involved arose in the *Grand Lodge Ancient Order of United Workmen* v. *Graham et al.,* 31 L. R. A. 133, where it was held that the right to use the name could not be claimed by a seceding body which had become incorporated to the exclusion of the unincorporated body from which the secession had taken place. In this case, however, the seceding body could not claim the adoption of the name in good faith as they had been previously members of the original body.

As opposed to this line of cases are such cases as the *Supreme Lodge Knights of Pythias* v. *The Improved Order Knights of Pythias,* 38 L. R. A. 658; where the application for injunction was refused. The Supreme Court of Michigan saying that, "where the name was not chosen for the purpose of deception and has not been used under circumstances intended or calculated to deceive, the similarity of name must be such as to deceive ordinary persons proceeding with ordinary care to justify the interference of a Court." The case of *Creswill* v. *The Knights of Pythias* has been cited and relied on by the appellants in this case. That case arose in Georgia between white and colored bodies each claiming to be entitled to the use of the name Knights of Pythias. In that case, as in this, the rules of the one body precluded the admission of colored members, and those of the other excluded white members. The Supreme Court of Georgia, however, granted the injunction which was asked. 133 Ga. 837. The case was then taken on appeal to the Supreme Court of the United States, and is reported in 225 U. S. 246, the opinion being by WHITE, C. J. The decision of the Georgia Court was reversed upon the ground of the laches of the plaintiff in making their application for the injunction. But in the course of his opinion the learned CHIEF JUSTICE said: "On examining the evidence we are compelled to say we do not think it has any tendency to prove an intent on the part of the defendant order, by the adoption of the designation given to their body, or the use of the emblem,

insignia, etc., employed to make it appear that their order and that of the complainant is one and the same, or that it tends to show that the use of the corporate name or the distinctive words 'Knights of Pythias' and the emblems, etc., of that order, operated in any degree to deceive the public or to work pecuniary damage to the complainant order within or without the State of Georgia." This decision rendered in 1912 is the latest in point of time of any of the cases thus far cited. If we turn to the commercial unfair competition cases, there is a considerable difference of decision, the result manifestly of the different views of different Courts as to the liability of the public to be misled and, therefore, it is difficult to deduce any other rule than that where in the opinion of the Court the similarity of names was such as was shown to have deceived the public, or to be liable to deceive the public the injunction has been granted and where this was not the case the injunction asked has uniformly been refused. As was said by LORD CHIEF JUSTICE HALSBURY, in *North Cheshire Brewing Co.* v. *Manchester Brewing Co.*, L. R. App. Cases, 1899, 83: "The real question is in a single sentence: Is this name so nearly resembling the name of another firm as to be likely to deceive?" In all of these cases the question is broader than the mere intent of the parties, for as was said in *American Clay Manfg. Co.* v. *American Clay Manfg. Co.*, 198 Pa. 189: "Irrespective of his intent, where the effect of the defendant's action is to produce confusion in the public mind" the injunction is granted. And it was this same principle which underlay the decision in the *Plant Seed Co.* v. *Michael Plant & Seed Co.*, 37 Mo. App. 313, where the attempt to restrain the use of the name failed, but the defendants were required to so modify the form of their printed matter to be issued to the public, as not to be a colorable imitation of the plaintiff's matter, and so tend to mislead the public.

The evidence in this case does not show that any one has in fact been misled, either within or without the State of

Maryland. Nor can it fairly be said to have operated to the detriment of the plaintiff, as the quarterly report shows a continually increasing number of members of the original order. Nor is there any positive evidence of a substantial character that any one has been deterred from joining the original order by reason of the existence of the Afro-American Body. It is true that the witness Beroth, one of the plaintiffs, did say, "It has resulted in confusion in the public mind and in the belief of many persons that the defendant corporation was a part of the Order of Owls." But the whole context of his evidence shows this to have been in the nature of an opinion of the witness, rather than a statement of a fact. The most that can be said is, that there exists apprehension on the part of some of the members of the white order, that individuals may be deterred from joining by reason of the existence of the colored order. There is no evidence that the colored order has ever made use of the term without prefixing to it the words "Afro-American," words which in and of themselves are indicative of a colored organization. It is difficult, therefore, to see how it can be fairly claimed that the public has been or is liable to be misled, and unless such tendency is manifest to the Court either as the result of evidence showing deceptions to have occurred, or such close identity in name as to almost inevitably lead to the same result, it fails to meet the test laid down by CHIEF JUSTICE WHITE in *Creswill* v. *Knights of Pythias, supra.*

As much, however, cannot be said for the use of the symbol of the Three Owls, which is at present the emblem of both bodies. The O's upon the breast of the three birds appearing in the symbol of the Indiana Order are not, as shown by the exhibit, clearly defined, and the letters AA and OOO appearing in connection with the symbol of the Afro-American Order are so easily omitted, and whether omitted or not will be less quickly caught by the eye than the representations of the birds themselves, that the public might well be misled thereby. Moreover, there has been no explanation made or

attempted of the reason for the adoption of the same number of birds and in the same relative position by the colored organization as appears in that of the white order. Such a symbol as the one composed of the representations of the owls more readily attracts the eye than do the letters of the alphabet, and is something which can be understood even by those unable to read. The emblem is, therefore, far more likely to deceive than is the name, and the similarity of number, position and attitude all tend to the same result. We do not decide that the Afro-American Order is to be precluded entirely from using any figure of an owl as an emblem, but only that the one shown in the evidence is so close a simulation of that of the Indiana Order, that its continued use would tend to a deception of the public, and should therefore be enjoined.

The decree below will accordingly be reversed **and the** cause remanded, to the end that a proper decree may be entered enjoining and restraining the appellant body, its officers, agents, servants and employees from in any manner using as the symbol of said corporation the figures of the three owls placed upon a horizontal limb or rod, or any such modification thereof as may be an imitation of or likely or liable to mislead and deceive the public with reference to the organization of which the device is a symbol or emblem, but dismissing the bill so far as the use of the name is concerned.

*Decree reversed and cause remanded, costs to be paid by the appellees.*