HECHT COMPANY *v.* SOL MORRIS ROSENBERG ET AL.

[No. 37, April Term, 1933.]

*Decided May 26th, 1933.*

The cause was argued before BOND, C. J., PATTISON, URNER, ADKINS, OFFUTT, DIGGES, and PARKE, JJ.

*H. Ralph Cover,* with whom was *Lee S. Meyer* on the brief, for the appellant.

*Grace R. Gerber Silverberg* and *John Wood,* for the appellees.

BOND, C. J., delivered the opinion of the Court.

The suit is one in equity seeking an injunction against alleged unfair competition in the use of a trade name and device; and the complainant appeals from a dismissal of its bill of complaint.

The Hecht Company, formerly a partnership, and since 1918 a corporation, has for over thirty years maintained in Baltimore City a store for the sale of wearing apparel, and to a lesser extent, upon occasion, other articles, in a large establishment which began at the corner of Baltimore and Charles Streets, and has since been extended until it occupies the whole Charles Street face of the block between Baltimore and Fayette Streets, with fronts on both of the latter streets; and its building is in part nine stories in height, and in part seven. The value of its building and equipment is estimated at $1,750,000. It is one of the most conspicuous and widely known retail stores in Baltimore, and naturally has the

custom of much of the population in what may be called the Baltimore metropolitan area, or area of retail trade with the city. During the whole period of its existence it has used, as the name of the store, "The Hub"; and has displayed this name on signs and in its advertising, and in connection with the name has displayed a picture of a hub of a wheel in a horizontal position between the words of the name. And, in the territory through which it extends its trade, it is known as "The Hub." Its business in the counties of the state extends to Westminster and elsewhere, as well as in neighboring states to some extent. In Westminster, which is thirty miles from Baltimore, and has a population of about 4,400, it had at the time of suit 500 customers represented in charge accounts on its books, and in the preceding year had made 300 deliveries in the town and in the vicinity. The number of cash purchasers and others not represented on the books is not known. It spent large sums of money advertising under the name and sign of "The Hub" in Baltimore newspapers which circulate in the Westminster neighborhood. The name and sign are not registered trade-marks of the store, but have been used altogether as the name and sign of the store; the name of the Hecht Company, or that of its predecessor partnership, not being used publicly at all.

The defendants, in March of the year 1932, bought a lease of a small store of one room on Main Street in Westminster, for sale of clothing and shoes, and also adopted the name and sign of a hub. A large vertical sign held out from the second story, left by the previous tenant, bears the word "Shoes," in large letters, and has now had painted on a smaller scale, at the top and the bottom, the name and picture of a hub, the pictorial hub being indistinguishable in design from that used by the complainant; and valances hanging inside the two show windows bear the words, "The Hub." The store has been advertised in Westminster newspapers only, in all but one instance as "The Hub of Good Values"; that one instance having been due to a printer's error. Checks of the firm have borne the name and device on the margins. The range of the defendants' custom has been comparatively

small and local, confined to Westminster and a few surrounding miles. It is, in short, a small country town store.

Testimony taken shows that there has been no effort on the part of the defendants to pass off their goods or their store as those of the large Baltimore store, and no pretension to connection of any kind with that store. On buying the lease, they put across the outside of the store, in large letters, a sign declaring that they had bought the lease; and in circulars distributed about the town and county they sought trade as the successors to the previous tenant. The design of the hub, placed on the permanent vertical sign, appears to have been selected by the painter, and drawings used in the newspaper advertising are stated to have been procured by the printer, from what he calls "stock cuts." Many witnesses have testified that in the minds of local customers there has been no confusion in fact of this store with the Baltimore establishment; a number have said that they regarded it only as the store in which the partnership had succeeded to the previous tenant. One witness testified to an inquiry whether the Westminster store was a branch of the Baltimore Hub. It appeared, further, that the name had been used for local stores in five or six other Maryland towns, and in two of nearby Pennsylvania towns.

Upon the ground of mere priority in use of the name and device, without any reference to actual confusion in the minds of possible customers, no injunction could be asked for. *Nims, Unfair Competition and Trade Marks* (3rd Ed.), 52; *Bagby v. Rivers,* 87 Md. 400, 423, 40 A. 171; *Afro-American Owls v. Talbot,* 123 Md. 465, 472, 91 A. 570. The question raised, therefore, is one of probability of confusion. And when we come to consider the probabilities, we seem to be confronted at once by the outstanding fact that, in the comparative sizes of the two stores, their comparative importance, characters, and locations, there is such differentiation as to render confusion hardly conceivable. They may be said to operate in different spheres. Without any evidence, it would be difficult for a court to suppose that people in or about Westminster dealing with the small one-room store

there, might think they were dealing with The Hub in Baltimore, or with a branch of it. And when to that difficulty is added the strong evidence produced here that there was in fact no confusion of the two establishments, and there was apparently no likelihood of confusion under present circumstances, we think the lack of ground for the issue of the injunction prayed is made manifest. Of course, there is an obvious danger of confusion in the use of the same name and insignia for two establishments, and under other facts and circumstances it might give rise to a right to an injunction; and the court expresses no opinion as to a possible ground of complaint in respect to the store at Westminster, or a store anywhere else, using the name or device under different circumstances. But an injunction cannot issue to restrain a wrong not proved to have occurred, and seeming not likely to occur, as in this instance. *Afro-American Owls v. Talbot, supra; Adams v. Michael,* 38 Md. 123, 126; *Witthaus v. Braun,* 44 Md. 303; *Warren Mfg. Co. v. Baltimore,* 119 Md. 188, 222, 86 A. 502; *Pope v. Clark,* 122 Md. 1, 89 A. 387; *Salisbury v. Camden Sewer Co.,* 135 Md. 563, 572, 109 A. 333.

*Decree affirmed, with costs.*