A. WEISKITTEL & SON COMPANY *v.* J. HARRY C. WEISKITTEL COMPANY, INC., ET AL.

[No. 61, April Term, 1934.]

*Decided June 14th, 1934.*

The cause was argued before BOND, C. J., and PATTI-SON, URNER, ADKINS, OFFUTT, DIGGES, PARKE, and SLOAN, JJ.

*Walter C. Mylander* and *Nathan Patz,* for the appellant.

*Harry N. Baetjer* and *Stuart S. Janney, Jr.,* for the appellees.

SLOAN, J., delivered the opinion of the Court.

The plaintiff, A. Weiskittel & Son Company, a corporation organized about 1907 under the laws of Delaware, with its operations in Baltimore, was engaged in the busi-

ness of manufacturing gas ranges, soil pipe, and enamel ware. At the time of incorporation it was a partnership owned by Anton and Harry C. Weiskittel, who had inherited the business from their father, Anton Weiskittel, who entered into, about 1850, a business which, in the course of time, assumed considerable proportions. The sons of Anton went along, prospering together, until February, 1925, when Anton, son of the founder, died, leaving a will whereby he left one-fourth of his interest in the corporation (about one-half) to his sons Herbert L. Weiskittel and Francis A. Weiskittel and the remaining three-fourths to the sons in trust for his wife and two daughters. Almost immediately, when the business was about at its peak, discord arose, resulting in a bill for receivership being filed by the sons of Anton, without any foundation, except an emotional one which needs no discussion here. The upshot of all the contention was that an auction was held, attended only by Harry C. Weiskittle, his sons, Harry C. Weiskittel, Jr., and Anton K. Weiskittel, on one side, and his nephews, Herbert L. Weiskittel and Francis A. Weiskittel, on the other side. The bidding resulted in the purchase by the nephews, sons of Anton, deceased, of the interest in the corporation of Harry C. Weiskittel, for $376,000. It was openly asserted by both sides that, in the event of the purchase by either, the other would go into the same line of business as that theretofore carried on by the old concern. So there was no sale of good will; on the contrary, the inheritance of ill will and bitterness, which Anton unintentionally left behind him.

After so selling their interest in the plaintiff corporation, Harry C. Weiskittel and his sons formed a corporation under the name of "Harry C. Weiskittel Company, Incorporated," which began at once to erect a plant on the Philadelphia Road, in Baltimore, for the manufacture of gas ranges and soil pipe, entered into active competition with the old company, and made its first shipment of goods on August 20th, 1931. The old company, on July 11th, 1932, filed its bill of complaint, amended December 20th, 1932, against Harry C. Weiskittel Company, Incorporated, and

Harry C. Weiskittel and his sons, praying: (1) That the defendants be enjoined from making "misrepresentations either express or implied whereby and wherefrom prospective customers might be led to believe that the gas ranges manufactured by the defendant corporation are manufactured by the plaintiff" which manufactures "Fire King" ranges: (2) that they be restrained from use of the name of "Harry C. Weiskittel Co., Inc.," without some descriptive text explaining that said company is not the manufacturer of "Fire King" gas ranges nor are any of its products the products of the plaintiff company, and from employing the name "Weiskittel" as any part of a corporate firm name, located in Baltimore, Md., in the manufacture of products similar to those manufactured by the plaintiff; (3) for an injunction pending the suit; (4) an accounting "of all profits made on gas ranges so fraudulently sold"; (5) a money decree; (6) general relief.

The defendants answered the bill, and demurred by way of answer to the amendment, but no action appears to have been taken on the demurrer, and, as the hearing and decision were on the merits, we can only so consider the case here.

The plaintiff makes a soil pipe under the name "Master Hub"; the defendant corporation one under the name "Star Hub," which is purchased from another concern, but as no complaint is made of the name of the soil pipe it is not in the case except as the product of "Weiskittel."

The gas range of the plaintiff, and its principal product, is known under the trade-name "Fire King." The range made by the defendant corporation is sold to the trade under the name "Real Host," and in addition it makes ranges for its customers under any name ordered, none of the names so used to date resembling in name the plaintiff's product. It, therefore, requires no argument or discussion to say that there is nothing unfair in the use made by the defendants in the brand or name of their respective gas ranges.

The whole controversy then revolves around the use

made by the personal defendants of their surname, "Weiskittel," in the charter of their corporation and in the conduct of its business. It is conceded by the defendants that if they misrepresented their products as the plaintiff's, such conduct would be a fraud on the plaintiff which could be restrained. This would be just as true if the use of the word "Weiskittel" had that effect. The proof of fraud may be actual or constructive. The right of a corporation to the exclusive use of its corporate name is a common law right, and equity will "prohibit another from using a name so similar to the corporate name as to be calculated to deceive the public." *Drive It Yourself Co. v. North,* 148 Md. 609, 614, 130 A. 57. It is not necessary to await the demonstration of confusion by actual experience, as the fraud may be so transparent as to be apparent to any observer. *Burton v. Taxicab Company,* 156 Md. 183, 185, 143 A. 799.

The incidents of actual confusion which arose between August 20th, 1931, and the 5th day of January, 1934, the day the hearing began, are so infrequent and trifling as compared with the number of transactions of either party as to require little, if any, comment. In nearly two and a half years there had been thirty-six letters addressed to the defendant intended for the plaintiff. In 2,529 calls on the plaintiff for service on or repairs to gas ranges over a period of fourteen months, it was found, when the plaintiff's employees called in answer to such requests, that twenty-three were on "Real Host" ranges made by defendants. There was confusion in only five or six accounts with customers, one of whom was a customer of both companies. *Hecht Co. v. Rosenberg,* 165 Md. 116, 166 A. 440.

With such facts as illustrations of actual confusion of the two businesses, let us see what the proof of constructive fraud is, and how far it may be calculated to mislead and deceive the public into believing it may be buying the products of the defendant when it intends to patronize the plaintiff, which after all is the test of fraud, in order to be the foundation of such a proceeding as this is. Here,

however, if there is any fraud it must be in the secondary meaning of the word "Weiskittel," in association with and as denoting the products made by the plaintiff. In other words, when the customer thinks of gas ranges, of whatever name, does he think of "Weiskittel" or is he attracted by the name "Fire King," "Real Host," "Oriole," or some other brand? Does the merchandise sell itself, or does it require salesmanship?

On its organization the defendant company published in the Baltimore Sun the following announcement:

"Announcement

"Harry C. Weiskittel, Sr.

"Anton K. Weiskittel and

"Harry C. Weiskittel, Jr., are no longer connected with A. Weiskittel & Son Co.

"A new corporation, Harry C. Weiskittel Co., Inc. has been organized to manufacture a new and modern line of Gas Ranges, Cast Iron Soil Pipe and Fittings and other Plumbing Fixtures.

"We take this opportunity to thank the trade and public for the many past personal favors and the new company hopes to merit your future confidence and patronage.

"Harry C. Weiskittel Co., Inc."

On their correspondence they pasted a sticker, reading as follows:

"IMPORTANT

"We have no connection with any other company. Be careful to address your orders to

"Harry C. Weiskittel Co., Inc.,

"4901 Philadelphia Road, Baltimore, Maryland.

"Telephone Broadway 0600."

On the bottom of its letterheads this is printed:

"NOTICE:—We have no connection with any other company. Be careful in addressing your mail."

These notices or warnings were offered by the defend-

ants as evidence of their efforts to advise the public that they were going into and were in business on their own account, and to avoid any confusion of their business with that of the plaintiff, into which they had been born and to which up to that time they had devoted their energies and which was the only business they knew. On the other hand, it might be said they had cashed in all the efforts of themselves and their forebears, and the account was closed, and that the credit was on the other side, paid for in cash. Such a condition as has here developed is ordinarily averted by agreement or purchase of good will, and unless so done, the seller or one retiring may enter the same line of business provided he meets the requirements of fair competition. It evidently was on the theory that Harry C. Weiskittel, Sr., could not use his experience with the old company as an inducement to the public to deal with him in his new enterprise, that the plaintiff offered in evidence a folder advertising the products of the defendant company which contained the following:

"Harry C. Weiskittel Co. Inc.
"4601-4901 Philadelphia Road, Baltimore, Md.

"This folder shows actual photographs of our new up-to-date line of *Real Host* Gas Ranges, designed and built by the Pioneer Gas Range Manufacturer.

"Harry C. Weiskittel."

On this phase of the case what Justice Holmes said in the celebrated Hall Safe case (*Herring-Hall-Marvin Safe Co. v. Hall's Safe Co.*) 208 U. S. 554, 28 S. Ct. 350, 351, 52 L. Ed. 617, 620, is peculiarly applicable, and that is: "The advantage which it would have had, and to which the petitioner has succeeded, is that of having been first and alone for so long in the field. Some of the Halls might have left it and set up for themselves. They might have competed with it, they might have called attention to the fact that they were the sons of the man who started the business, they might have claimed their due share, if any, of the merit in making Hall's safes what they were. *White v. Trowbridge*, 216 Pa. 11, 18, 22, 64 A. 862. But they

would have been at the disadvantage that some names and phrases, otherwise truthful and natural to use, would convey to the public the notion that they were continuing the business done by the company, or that they were in some privity with the established manufacture of safes which the public already knew and liked. To convey that notion would be a fraud, and would have to be stopped. Therefore, such names and phrases could be used only if so explained that they would not deceive."

Harry C. Weiskittel has not gone as far as the invading Halls in exploiting his former experience and business connections, and, by way of advertising in four newspapers of Baltimore, and in two trade papers, eleven publications or news items in all, has fully met the test of the Hall decision, where, farther on in the opinion, it is said: "With such explanations the defendants may use the Halls' name, and, if it likes, may show that they are sons of the first Hall and brought up in their business by him, and otherwise may state the facts."

The question then is as to the right of the defendants to use the name "Weiskittel" as part of the defendant company's corporate name, and whether this surname has so ear-marked the plaintiff's products as to make its use by another engaged in the same line of business a fraud on the public which works injury to the plaintiff. In other words, does it enable the defendants to palm off their goods on the public as the goods of the plaintiff. It is the public that must be deceived.

It has been settled over and over that there is no exclusive right in any one to the use of a surname, but at the same time it cannot be used to perpetrate a fraud and steal another's trade.

The rule as stated by Justice Brown in the "Brown's Iron Bitters" case *(Brown Chemical Co. v. Meyer)* 139 U. S. 540, 11 S. Ct. 625, 627, 35 L. Ed. 247, after the citation of authorities in cases where relief was granted, is: "These cases obviously apply only where the defendant adds to his own name imitations of the plaintiff's labels, boxes, or packages, and thereby induces the pub-

lic to believe that his goods are those of the plaintiff. A man's name is his own property, and he has the same right to its use and enjoyment as he has to that of any other species of property." Or, as said by Justice White in the Singer Sewing Machine case *(Singer Sewing Machine Co. v. June Mfg. Co.)* 163 U. S. 169, 16 S. Ct. 1002, 1009, 41 L. Ed. 118: "Although 'every one has the absolute right to use his own name honestly in his own business, even though he may thereby incidentally interfere with and injure the business of another having the same name, in such case the inconvenience or loss to which those having a common right are subjected is *damnum absque injuria*. But although he may thus use his name, he cannot resort to any artifice, or do any act, calculated to mislead the public as to the identity of the business firm or establishment, or of the article produced by them, and thus produce injury to the other beyond that which results from the similarity of name.' " *Howe Scale Co. v. Wyckoff, Seamans & Benedict,* 198 U. S. 118, 25 S. Ct. 609, 49 L. Ed. 972; *Bagby & Rivers Co. v. Rivers,* 87 Md. 400, 40 A. 171.

Just two years ago, this term, we had practically the same question before this court in *Neubert v. Neubert,* 163 Md. 172, 161 A. 16, 17. An oyster packer had built up and carried on for years a business successful largely because of the reputation made for "Neubert's Oysters." Another business, carried on for years under the name "Castle Packing Company," changed its name to "Neubert Bros.," with the result that the same complaint as here was made. The defendants in that case had not only failed, but refused, to take any measures to advise the public that it had no connection with any other business of the same or similar name. The case came up on demurrer, after a temporary injunction had been granted "against the use by the defendants of the name 'Neubert' in any advertisement, label, price list, or other literature in their oyster business, without accompanying it by the statement: 'This firm has no connection with the original firm of Chas. Neubert & Co., oyster packers of Balti-

more.' " In affirming that order this court in conclusion said: "The provision in the order for the explanatory statement to be made by the defendants in their use of the trade-name is substantially in accordance with forms prescribed in" the federal cases there cited.

The plaintiff here contends that its products have been so signalized or branded by the name "Weiskittel" as to make its use by the defendants the perpetration of a fraud.

The plaintiff offered in evidence a catalogue and a folder from which it plainly appears that "Fire King" gas stoves and ranges are featured by name. They are not only advertised and exploited, but they are trade-marked by that name as well. The name "Fire King" is so conspicuously placed on the front of every range in both catalogue and folder that the most casual observer could not fail to see it. No other words appear on them or in combination with them. If the name "Weiskittel" is on these ranges, it must be in some inconspicuous place. The plaintiff is at such pains to publicize its ranges under the trade-name "Fire King," that its business is built up around it, rather than by the exploitation of the name of the maker. So evidently the manufacturer's policy has been rather to acquire whatever prestige it has from its product, than to fasten its identity on the product, as did Hall, Singer, Baker, Knabe, Chickering, Waterman and others whose products were known by the names of the manufacturers.

There is no evidence in this record that the defendants have done any act on their part to fool the public into the belief that their goods are the goods of the plaintiff with no imitation of any name or brand of the plaintiff's products. All they have done is to build a factory which produces two lines of goods which make them rivals and competitors for business of the same kind made by a corporation containing the same surname as that of the plaintiff, which was also the surname of the personal defendants and owners of the stock of the defendant corporation. It would have been another case if, as so fre-

quently has happened in these unfair competition cases, they had appropriated a name. If that had been the case the purpose would have been so manifest as to have revealed the fraud without any other evidence. The measures the defendants took to disclaim any connection with the plaintiff's business, to meet the requirements of the rules laid down by this and other courts, as herein cited, indicate that they took advice of capable counsel as to what course they should pursue in launching and carrying on their business, so as to avoid public misunderstanding or actual confusion. The chancellor was right in denying the injunction, and for the reasons which we have adopted.

*Decree affirmed, with costs.*