We see no error in the ruling of the district judge.

### Decree.

It is therefore ordered that the writs herein issued be discharged.

O'NIELL, C. J., and OVERTON, J., dissent.

---

(111 So. 667)

No. 27581.

### ROUND TABLE CLUB v. BOND et al.

(Jan. 3, 1927.   Rehearing Denied Feb. 28, 1927.)

*(Syllabus by Editorial Staff.)*

Corporations ⬥49(3)—"The Loyal Knights of the Round Table," luncheon club, held not restrained from using name at suit of literary "Round Table Club" (Act No. 254 of 1914, § 2[a]).

"The Loyal Knights of the Round Table," a luncheon club, will not be restrained, under Act No. 254 of 1914, § 2(a), from using name "Round Table," at suit of "Round Table Club," a literary and scientific club, though complainant received phone call as to bill contracted by defendant and mail intended for defendant, since such showing is not sufficient to show that use of name will result in injury to complainant.

Rogers, J., dissenting.

Appeal from Civil District Court, Parish of Orleans; H. C. Cage, Judge.

Suit by the Round Table Club against Nathaniel W. Bond and others. Judgment for plaintiff, and defendants appeal. Reversed, and suit ordered dismissed.

Bond, Curtis & Hall, of New Orleans, for appellants.

John D. Miller, Charles Rosen, Henry W. Robinson, and F. B. Freeland, all of New Orleans, for appellee.

LAND, J.   This is an injunction proceeding in which "the Round Table Club" of the city of New Orleans seeks to restrain defendants, their associates, and successors from appropriating and using in any manner whatsoever the name, "Round Table," as the whole or a part of the name of any organization of which they may be members, and from forming or organizing any association using said name as part of its name, and from forming or incorporating under the laws of this state any association using in part or in entirety the name "Round Table."

From a judgment permanently restraining defendants as prayed for they have appealed.

1. Defendants admit that there is now existing in the city of New Orleans an organization called the "Loyal Knights of the Round Table, New Orleans, La."; that said organization is a local branch of the "Loyal Knights of the Round Table," a national and international concern based on the weekly luncheon idea; and that Luther Burbank, Thomas Edison, and many other prominent men are members of this organization.

Defendants admit that their organization has not been incorporated, and that they intend to form a corporation to be known as the Loyal Knights of the Round Table. Defendants deny that the corporation contemplated by them is, or is intended to be, an infringement on petitioners' rights, or that they intend to form a society to be known as the Round Table Club.

Defendants deny that their organization is in any manner devoted to literary or scientific purposes, and aver that the objects, purposes, and basic idea of their organization, as well as its membership, are so totally different from that of plaintiff club that no confusion can occur or competition exist between plaintiffs and defendants.

It appears from the evidence that the parent body, Loyal Knights of the Round Table,

is located in Oakland, California, and is known as the national organization. Judge Jesse J. Dunn is president, and Dr. Harold H. Meredith is first vice president, of the national organization.

The parent body was organized in the year 1923, and has branches in Oakland, San Francisco, Eureka, Los Angeles, Long Branch, Pasadena, Sacramento, Stockton, Denver, Salt Lake City, Toledo, Kansas City, Detroit, and Birmingham, and "tables" are now in process of organization in Richmond, Santa Rosa, Buffalo, and New Orleans.

The branch organizations take the name of the parent organization, and add to it the name of the city in which organized.

The purpose of each organization is a luncheon and service club along the lines of the Lions and the Kiwanis Club. The members are drawn from the executive or officers of a particular business, and only one member is selected from each profession or trade. In other words, there will be only one lawyer, one doctor, one accountant, etc., in each branch organization.

The branch organizations are formed for neither literary nor scientific purposes. They are once a week luncheon clubs, and prominent speakers address the members. These speakers are not members. The luncheons are paid for by collections from each member present on that day. The meetings are held in some hotel or prominent restaurant.

The branch organization in New Orleans has no clubrooms, and owns no property, and does not contemplate acquiring any.

The branch organizations are known as "tables," and are never called "clubs."

Plaintiff corporation, "the Round Table Club" was chartered on April 23, 1902, under the provisions of the statutes of the state relative to the organization of corporations for literary, scientific, and educational purposes. The object for which "the Round Table Club" was created is declared in its articles of incorporation to be "the cultivation of fellowship among those having a common interest in literature, science, and art."

"The Round Table Club" maintains a clubhouse in the city of New Orleans, has a membership of over 300 members, composed largely of university graduates and men interested in educational, scientific, and civic matters, and maintains in its clubhouse a large collection of books, pictures, and furniture for the operation of the club, and a lecture hall for the weekly delivery of lectures on questions of public interest by some of the most prominent persons in the country.

The real estate of "the Round Table Club" is valued at more than $30,000, and it has an annual revenue exceeding $15,000 for its maintenance. While there may be some similarity between the distinctive words, "Round Table," in the names of each of these organizations, it is clear that the purpose of their organization is entirely dissimilar, and that their membership is drawn from wholly different sources.

Manifestly there can be no competition between them as to membership, and consequently no confusion as to the object of either organization.

We fail to find any such confusion proven in this case as would justify the issuance of an injunction under Act No. 254 of 1914, which provides in section 2 (a) that the incorporators of a nontrading or nonprofit corporation shall state in the authentic act of incorporation "the name of the corporation; which shall not be the same, nor so similar as to cause confusion with the name of any other corporation."

Defendant organization has contracted one account in the city of New Orleans, and that was for printing done. "The Round Table Club" received a telephone call with reference to this bill, and also some mail intended for the members of defendant organization, "the

Knights of the Round Table, New Orleans, La."

There was no confusion whatever in the press notices, as they refer distinctly to "the Loyal Knights of the Round Table," established in 1923 in Oakland, Cal., and to L. A. Wright, as associate extension director of the organization, and to his work in establishing the New Orleans "table."

There is nothing in the confusion, as proven in the record, to affect in the slightest degree the prestige and distinction of the name of "the Round Table Club," nor to impair its value either as an ethical or a property right. It is not pretended in the evidence in the case that any such confusion has occurred as to cause the loss of a single applicant for membership in "the Round Table Club" because of the existence of defendant organization in the city of New Orleans and of the similarity of its name to that of plaintiff corporation.

As announced in Drummond Tobacco Co. v. Randle et al., 114 Ill. 433, 2 N. E. 542:

"No authority cited by the counsel for complainant holds, and we are aware of none not cited by them which holds, that the use of a name in a corporation will be enjoined unless it is made to appear, by all the circumstances, that the proposed use of the name will likely result in injury to the complainant."

In State ex rel. Hutchinson v. McGrath, 92 Mo. 357, 5 S. W. 30, it is said that—

"the name of a corporation is a necessary element of its existence, and, aside from any statute, the right to its exclusive use will be protected upon the same principle that persons are protected in the use of trade-marks. Boone on Corp., Sec. 32; Newby v. Railroad, 1 Deady, 609; Ex parte Walker, 1 Tenn. Ch. 97; Holmes v. Holmes, 37 Conn. 291 [9 Am. Rep. 324]."

In Holmes, Booth & Haydens v. Holmes, Booth & Atwood Manf. Co., 37 Conn. 295, 9 Am. Rep. 324, it is stated that—

"the ground on which courts of equity afford relief in this class of cases [trade-marks] is the injury to the party aggrieved, and the imposition upon the public by causing them to believe that the goods of one man or firm are the production of another."

See, also, Afro-American Order of Owls v. Talbot, 123 Md. 465, 91 A. 570; Richardson & Boynton Co. v. Richardson & Morgan Co., 8 N. Y. S. 52.[1]

The proof of confusion as to some mere negligible matter is not sufficient.

The judgment appealed from is annulled and reversed, and it is now ordered that plaintiff's demand be rejected, and that this suit be dismissed, at plaintiff's cost.

ROGERS, J., dissents, being of the opinion that the judgment appealed from should be affirmed.

---

[1] Reported in full in the N. Y. Supplement; not reported in full in 55 Hun, 606.