34 So.2d 405

**CONTINENTAL INS. CO. v. MARTIN,**
Secretary of State and Insurance
Com'r, et al.
No. 38753.

Feb. 16, 1948.

George B. Matthews, of Baton Rouge, Lemle, Moreno & Lemle, of New Orleans, for plaintiff and appellant.

Fred S. LeBlanc, Atty. Gen., and W. C. Perrault, 1st Asst. Atty. Gen., for Wade O. Martin, Jr., Secretary of State and Insurance Commissioner, defendant and appellee.

H. M. Oster, of Dallas, Tex., and Kemble K. Kennedy, of Baton Rouge, for Continental Fire & Casualty Ins. Corp., intervener and appellee.

HAMITER, Justice.

The Continental Insurance Company, a corporation organized under the laws of

the State of New York and qualified to do business in the State of Louisiana (hereinafter referred to as the New York company), instituted this injunction proceeding against Wade O. Martin, Jr., Secretary of State and Insurance Commissioner of Louisiana, to enjoin and prohibit him from issuing a certificate of authority to engage in business in Louisiana to the Continental Fire and Casualty Insurance Corporation, a corporation organized under the laws of the State of Texas (hereinafter referred to as the Texas company). Plaintiff alleges that such official has made known his intention to grant the certificate to the Texas company, and that he will issue it unless restrained by process of a court of competent jurisdiction.

The New York company was organized in 1852 and is licensed to do business in every state of the United States. The Texas company was organized in 1944 and is qualified to operate in Texas, Arizona, Arkansas and Oklahoma. Both write fire and casualty insurance.

The basis of this proceeding is Act 116 of 1946, the pertinent provision of which reads as follows:

" * * * That the corporate name of any insurance company organized under the laws of this State or any foreign insurance company desiring to qualify to do business in this State shall not be the same as, nor deceptively similar to, the name of any other domestic insurance corpora-

tion or of any foreign insurance corporation authorized to do business in this State, * * *."

On the filing of the petition plaintiff secured a temporary restraining order and also a rule directed to the defendant to show cause why a preliminary writ of injunction should not issue.

Thereafter, the Texas company joined in the proceeding by way of intervention, resisting the demands of plaintiff.

When the rule to show cause came on to be heard defendant filed exceptions of no right and no cause of action and an answer; and it was then agreed by counsel that the case be assigned for a trial of the exceptions and of the merits on July 1, 1947, the temporary restraining order meanwhile to remain in full force and effect. On that date, after agreeing that defendant's answer to the rule be considered as an answer to the merits, counsel commenced the trial.

At the trial's conclusion, the court decreed that the exceptions of no right and no cause of action be overruled and, further, that there be judgment in favor of the defendant and the intervenor dissolving the temporary restraining order theretofore issued, recalling and setting aside the rule nisi for a preliminary writ of injunction and dismissing plaintiff's suit at its costs.

Immediately after the signing of the judgment, plaintiff's counsel obtained an order for an appeal, devolutive in charac-

ter for there was nothing to suspend, and in due course perfected it. At the same time they gave notice of their intention to apply to this court for writs of prohibition, mandamus and certiorari.

On the showing made in plaintiff's application (the transcript of evidence was not a part thereof), we refused to grant the remedial writs, assigning as our reason for the refusal: "There appears no abuse of the trial judge's discretion in refusing to grant the preliminary writ of injunction."

The case now, presented on the entire record as made up in the trial court, is before us for consideration on plaintiff's devolutive appeal.

At the commencement of their argument here, appellee's counsel suggest that we should not entertain the appeal, they stating, to quote from their brief, that:

"It is the position of appellees that the question in this case has actually become moot in view of the fact that the remedial writs were denied to appellant and the Continental Fire & Casualty Insurance Corporation has been granted a Certificate of Authority to do business and is doing business in the State of Louisiana. Technically, the question might not be moot, but for all practical purposes it is moot, indeed. Since this Court held that trial judge did not abuse his discretion in refusing to grant a writ of preliminary injunction and the entire relief sought, as the prayer of the petition will show, was injunctive in char-

acter, it appears that there is nothing for this Court to adjudicate."

There is nothing in the record supporting the statement that the certificate of authority has been issued. But, conceding it to be correct, the suggestion that the question involved in this proceeding "is now moot for all practical purposes, although technically it might not be moot" need not be considered in view of the conclusion we have reached on the merits of the case as presented by the appeal.

Appellant does not contend here that it has an exclusive right to the use of the name "Continental." It concedes that the word "Continental" is a geographical adjective that cannot be exclusively appropriated as a trade name. Neither has it sought to show, and it does not now suggest, that the Texas company is guilty of an unfair competition against which the New York company's name, possessing secondary signification by reason of the long use thereof, should be protected. Rather, for the success of this action, appellant relies entirely on Act 116 of 1946 which forbids the issuance of a certificate of authority to any insurance company having a corporate name the same as or *deceptively similar* to the name of any other insurance company presently authorized to do business in this state.

While admitting that the corporate name of the Texas company (Continental Fire and Casualty Insurance Corporation) is not the same as that of the New York company (Continental Insurance Company), and further admitting that by a reading of those names side by side they are clearly distinguishable, counsel for appellant maintains that there exists a deceptive similarity between the two such as the Legislature intended to prevent through the enactment of Act 116 of 1946. In this connection they argue, to quote from their brief, that:

"If it were the practice of the average member of the general public, before taking out a policy of insurance, to hold side by side the corporate names of the plaintiff and the Intervenor, there could be no possibility of deception, if such person could read. If there were no possibility of deception, if that were the general practice, then there would have been no need for legislation such as is embodied in Act 116 of 1946. What the legislature intended to prevent was the possibility of practicing deception upon the average member of the public exercising the usual degree of care, which is a smaller degree of care than would be involved in holding the corporate names in juxtaposition. What the legislature intended to prevent was the entrance into Louisiana of a company with a name so similar to the name of another company already here that the general use or designation of the applying company could be used as a means of deception of the average person. The statute envisioned usual and not theoretical conduct. * * *"

It is to be noted that no provision is made in Act 116 of 1946 for the actual issuing by the Secretary of State of certificates of authority. That statute merely prescribes one of the conditions, among the many found in our law, that must be met and satisfied before an insurance company can qualify to do business in this state. The matter of the issuance of a certificate of authority is provided for by Act 105 (Section 2, Article II) of 1898, wherein the following is said:

"* * * No Insurance company organized under the laws of any other State in the United States, ·or of any foreign government, shall be admitted and authorized to do business in this State until:

*        *        *        *        *        *

"It shall obtain from the Secretary of State a certificate that it has complied with the laws of this State and is authorized to make contracts of insurance."

By this provision seemingly the Secretary of State is granted some discretion in determining whether or not the insurance company applying for authorization to do business has complied with the laws of this state, including Act 116 of 1946. To say the least it clearly confers upon him the power to act in the first instance. From which it follows that in the present case this court should not and must not interfere with that official in the carrying out of his announced intention of issuing the certificate of authority to the Texas company unless the record discloses an abuse of the power granted him.

From the record it appears that when the Texas company filed application for the certificate of authority, the New York company objected in writing on the ground that the corporate name of the former was deceptively similar to that of the latter. Thereupon the Secretary of State, who is also the Insurance Commissioner of Louisiana, ordered a hearing on the question raised by the objection. At the hearing, held in due course, both companies (represented by counsel) presented evidence and oral arguments. Thereafter, and following the filing of briefs by the respective parties, the Secretary of State concluded that a certificate of authority should be issued to the Texas company.

There was evidence offered at such hearing, as well as at the trial of this case in the district court, showing that some confusion has arisen in the mail of the two companies by reason of the similarity of their corporate names. It was also shown, however, that confusion of that kind often occurs in the field of insurance where the names of companies are entirely dissimilar. But an eliminating of mere confusion in the mail obviously was not contemplated by the Legislature in the enactment of Act 116 of 1946. It intended, unquestionably, to provide protection against deception arising out of the use of similar names. And this protection, we

think, is primarily for the benefit of the public generally.

Of course competing corporations are also protected in some measure by the statute, although their protection principally is afforded by the laws relating to unfair competition. But no proof has been made of actual injury to this plaintiff as a result of the Texas company's use of its corporate name, notwithstanding that both have been and are conducting competing businesses in the States of Texas, Arizona and Arkansas. Nor is it shown by the record that the Texas company has been guilty of unfair competition, or that it selected its name with the view of infringing upon the business and good will of the New York company.

That the general public will be deceived by the similarity of the corporate names of the two companies involved herein does not appear likely. It is well known, and the record supports the statement, that in obtaining fire and casualty insurance the average individual is not concerned at all about the name of the company that will issue the policy. Ordinarily he deals with a reputable agency or broker, in whom he has faith and confidence, and relies on the latter's judgment in the choosing of the insurer. And there is slight possibility that an experienced insurance agent will be misled by a similarity of names. Of course, a few individuals and industrial concerns insist on selecting their

insurers; but they, in most instances, are thoroughly familiar with insurance matters and records and can easily distinguish between companies enjoying similar names.

 From the evidence before us, we conclude, as did the trial judge, that the Secretary of State did not abuse the power vested in him by law when he decided that a certificate of authority to do business in this state should be issued to the Continental Fire and Casualty Insurance Corporation.

The judgment is affirmed.

O'NIELL, C. J., absent.