LOTTINGER, Judge.
This is an appeal from a judgment of the lower court dismissing the plaintiff’s application for a preliminary writ of injunction. The trial judge rendered written reasons for his judgment which we here-, with quote in full:
“This is a suit wherein the plaintiff, ‘Prince Hall Grand Lodge of Free and Accepted Ancient York Masons (Prince Hall origin) Compact in and for the State of Louisiana and jurisdiction thereunto belonging, sometimes also referred to as the Most Worshipful Prince Hall Grand Lodge of Ancient Free and Accepted York Rite Masons’, a non-profit organization, seeks to enjoin the ‘Most Worshipful Prince Hall Grand Lodge, Free and Accepted Masons of Louisiana,’ from appropriating, using, assuming or employing the name used by petitioner and particularly from using the name ‘Prince Hall Grand Lodge’ or the distinctive words' ‘Prince Hall’ in its name, identity, description or other activities.
“The plaintiff alleges that it was organized by Act passed before Rolla A. Tichen- or, late a Notary Public in and for the Parish of Orleans dated June 18, 1913, which act is duly recorded in the mortgage records of the Parish of, Orleans.
“That defendant organization is a nonprofit organization organized March 6, 1869 by act No. 71 of the Legislature of the State of Louisiana for the year 1869 under the name and style of the ‘Grand Lodge of Free and Accepted Ancient York Masons for the State of Louisiana.’
, “Beginning with paragraph IV, the remaining allegations of the petition are as follows:
• “ ‘IV. Plaintiff, since its formation to the present time, under its said distinctive *99 name, has promoted the objects of said fraternal organization, and has formed and administered subordinate lodges for this purpose in various parts of the State of Louisiana, all in accordance with and pursuant to its authority and purposes as set forth in its said act of incorporation.
‘“V. The words “Prince Hall Grand Lodge” are the distinctive words in the name of plaintiff which cardinally distinguish plaintiff from other fraternal bodies of like kind in the State of Louisiana, and plaintiff avers that it has acquired, the exclusive right to the use of said distinctive words by virtue of its having first used said name, and having used said name continuously for over forty (40) years.
“ ‘VI. The continued existence and success of plaintiff is largely dependent upon its distinctive name and repute, in which name it has established its reputation as a fraternal organization.
“ ‘VII. Defendant, as aforementioned, was incorporated in this State in the year 1869 under the name “Grand Lodge of Free and Accepted Ancient York Masons for the State of Louisiana,” and for some time, both before and after its incorporation, was also called the “Most Worshipful Eureka Grand Lodge, F. & A. M. for the State of Louisiana.”
“ ‘VIII. By act passed before H. Payne Breazeale, Notary Public in and for the Parish of East Baton Rouge, State of Louisiana, dated March 24, 1947, a certified photostat copy of which is annexed hereto and made part hereof, said defendant amended its charter by changing its name from “Grand Lodge of Free and Accepted Ancient York Masons for the State of Louisiana” (or “M. W. Eureka Grand Lodge, F. & A. M. for the State of Louisiana”) to “M. W. Prince Hall Grand Lodge, Free and Accepted Masons of Louisiana.”
“ ‘IX. Defendant, at all times mentioned in the last preceding paragraph, had full knowledge of plaintiff’s name, organization and existence, and deliberately and in wilful 'violation of plaintiff’s rights, unlawfully assumed and is infringing upon' plaintiff’s name, and is continuing to 'infringe upon plaintiffs exclusive name and rights as herein set forth, to: the irreparable injury of plaintiff and'to the confusion of plaintiff’s business and its activities.
“ ‘X. The distinctive words “Prince Hall Grand Lodge” now used by defendant to designate its organization are the same as those used by plaintiff, and defendant’s newly assumed name is so nearly similar to the name of plaintiff as to be a colorable imitation thereof, and so as to tend to deceive and confuse the public concerning the identities of the respective organizations, and .especially to deceive and confuse prospective members of plaintiff, thereby constituting a fraud upon plaintiff and the general public, all to the serious and irreparable injury to plaintiff and its subordinate Lodges and members.
“ ‘XI. Plaintiff has no adequate remedy at law for the reason that its damage is irreparable and incapable of computation, and the continued use of the name “Prince Hall Grand Lodge” and other exclusive rights of ¿plaintiff by defendant constitute a continuing infringement against plaintiff’s exclusive rights.
“ ‘XII. Both plaintiff and defendant are organizations composed exclusively of members of the colored race, and their objects and purposes are similar and practically identical.’
“The defendant, before answering, filed (1) an exception of want of capacity of Edward Frye, alleged Most Worshipful Master of plaintiff organization to bring this suit; (2) an exception of no cause or right of action, both of which were referred to the merits.
“Thereafter, reserving all rights under said exceptions, defendant filed its answer wherein it admitted the allegations of paragraph 1, 7 and 8 of the petition.
“Defendant, however, denies all other allegations of the petition, particularly that plaintiff has in fact established any reputation as a fraternal organization or that *100 it has enjoyed any success as such; and in answer to paragraph 9 of the petition, alleges that:
“ ‘Further, respondent says that the existence of any organization in the State of Louisiana existing or operating under the name alleged to be that of the plaintiff was wholly unknown to respondent prior to the filing of this suit and respondent denies that there is or has been in fact any such organization actually functioning as a fraternal order in Louisiana under that name. Respondent further says that there is no record in the telephone or city directories of the City of New Orleans of any such organization as that alleged to be the name of the plaintiff, that if it existed in 1947 or 1944 or at any. time in between or since, it has managed to keep its existence and name a secret; there is nothing on record in the office of the Secretary of State indicating' the existence of the plaintiff; that in 1944 respondent concluded by resolution, a copy of which is annexed and made a part hereof as fully as if copied herein, to use the name Prince Hall as a part of its own in honor of Prince Hall, the first American Negro to become a Grand Master of Negro Masons, from which respondent is derived, but did not do so by formal notarial act until 1947; that since then nearly seven (7) years have elapsed during which respondent’s name has been given the widest possible publicity among negroes in the City of New Orleans and elsewhere throughout the State of Louisiana without complaint from anyone.’
“In paragraph 13 of the answer, we find the following:
“ ‘That respondent has been most active throughout the State of Louisiana in every community wherein there is any sizeable group of negroes, such activities including the following respondent:
“‘(1) Conducts a charity program through which thousands of dollars are distributed to the poor and needy annually.
‘“(2) Through an Educational Program assists each year deserving boys and girls, through scholarships to go to college.
“‘(3) In cooperation with" National Urban League conducts a vocational guidance program for Negro Youth in Louisiana. In this program Negroes from all over the State participate.
“ ‘(4) Conducts Leadership Education Conference át Southern University in cooperation with Louisiana Educational Association designed to train leaders in the various communities of the State in the technique of community leadership.
“ ‘(5) Does not merely support, but leads in the campaign for funds for March of Dimes.
“‘(6) Assists the American Legion in support of Bayou Boys State by sponsoring financially a minimum of one hundred (100) boys from all sections of, the State each year.
“ ‘(7) In cooperation with U. S. Treasury Department, conducts campaign to sell Defense Bonds.
“‘(8) Holds public meetings'such as:
“‘(a) Laying corner stones for lodge halls, churches, schools, etc. with the name “M. W. Prince Hall Grand Lodge, Free and Accepted Masons of Louisiana” inscribed thereon.
“‘(b) Holds District Meetings at strategic points in the state attended by large groups of people.
“ ‘(c) Holds Grand Lodge Meetings annually at various places in the state.
■ “ ‘(9) Conducts Americanism Program on ’birthday of Prince Hall each year foi purpose of altering the Negroes of Louisiana against the evils- of' communism.
“ ‘(10) Works in cooperation with Farmer’s Home Administration of United States in Louisiana in the making of farm loans available to negro borrowers, taking mortgages for security which are filed of record in Counties where loans are to be made.
*101 “ ‘(11) Owns extensive real, estate, both, by Grand Lodge and subordinate lodges, in name of Prince Hall Grand Lodge with deeds thereto placed of record.
“‘(12) Owns and operates a journal “The Plumbline,” entered as second class matter in post office which is generally circulated to Masons and the public throughout Louisiana. This publication has been in existence since 1916 and is published monthly.
and it is impossible that plaintiff could have remained in ignorance of such . activities by respondent in its present name.’
“This lengthy statement of the pleadings has been set out in view of the contention-of the defendant that until this suit was filed, plaintiff organization had hardly 'been heard of, and of the testimony offered in support of this contention.
“The evidence in the record to the effect that plaintiff organization ceased to function to any appreciable degree many years ago is abundant and it also appears from the admissions of the witnesses called on behalf of plaintiff that there are no more than three subordinate lodges of this organization in the entire state. There are also in the record various affidavits by former members of plaintiff organization that for lack of funds, none of the benefits resulting from membership have ever been paid.
“Aside from this, it appears from the testimony of the present alleged Grand Master Godfrey Butler that most of the records of the organization prior to 1947 were destroyed by fire and that such records extant since that time are in the possession of the Grand Secretary, one Merritt, who resides at Felixville, Louisiana, who did not appear as a witness and who did not produce any records of any sort.
“The only witnesses sworn on behalf of plaintiff were Butler and Willie E. Leonared who lives in St. Helena Parish, who claims to be at present Deputy Grand Master. Perusal of the testimony of these two witnesses sufficeth to show beyond any doubt that plaintiff organization, if not dead, is nearly so, and that its activities amount to nothing.
“The evidence offered on 'behalf of defendant relating to its history, its activities and influence with the negroes in this State discloses that it is a most substantial organization and that in a very large measure it is contributing to, the betterment'of its members and various other persons not active members of the organization. Its membership exceeds 10,000, while the plaintiff organization has a doubtful membership in the entire State of less than-S00.
“It is argued by plaintiff’s learned counsel that the size, strength, membership and activities of the two organizations is not properly a matter to be considered, - the question presented being entirely a legal question. Ordinarily speaking he is correct. However, if from the evidence it can be fairly concluded that plaintiff organization is practically defunct, its right to prosecute this suit and stand in judgment is a matter well worth consideration.
Opinion
“As to the exception of want of capacity of the alleged Grand Master Frye, to bring this suit, the same is overruled.
“There is in the record a resolution purportedly adopted by plaintiff organization March 31, 1954, authorizing the filing of the suit and employing counsel. The resolution is very vague as to just who adopted it, — the Grand Lodge or a subordinate lodge. Standing alone, I am of the opinion that it is worthless. However, under the provisions of L.S.A.[R.S.] 12:120(c) suit may be filed on behalf of such a corporation by the President or Vice-President. I am of the opinion that a suit instituted on behalf of the corporation by the ‘Worshipful Master’ is authorized and legally permissible. The exception is therefore overruled.
“On the merits of the case, learned counsel for plaintiff relies upon L.S.A.[R.S.j 12:104, Sections B and E of which read as follows:
*102 “B. The corporate name shall not be the same as, nor deceptively similar to:
'“‘(1) 'The name of any other domestic corporation, business or nonprofit, or of any foreign corporation, business or nonprofit, authorized to do' business in this state, or the name of any unincorporated body whatsoever, unless such other domestic or foreign corporation or unincorporated ■ body is about to change its name or to cease doing business or is being liquidated, or such foreign corporation is about to withdraw from doing business in this state;
“ ‘(2) The name of any administrative department, board, commission, or other agency in the state;
“ ‘(3) A name, the exclusive right to which is, at the time, reserved by any other corporation, domestic or foreign business or nonprofit.
******
“ ‘E. A' corporation shall have' the exclusive use of its name and emblem. No person or organization may use a name or emblem deceptively similar to one adopted by a corporation. If two nonprofit corporations or organizations have adopted names or emblems substantially similar, the organization which was first incorporated, whether in this state or elsewhere, shall have prior and exclusive use of the name or emblem adopted by it. If any organization or the members thereof are infringing or about to infringe upon the name or emblem of a nonprofit corporation, the corporation may obtain injunc-tive relief in the court of proper jurisdiction. If the name or emblem used by an organization or its members is deceptively similar to a riame or emblem the exclusive use of which is reserved to a nonprofit corporation — injunctive relief shall be granted without necessity of proof that any person in fact has been misled or deceived. * * * ”
and upon the decision in Grand Orient Lodge of Louisiana V. Jackson, 12 La. App. 555, 125 So. 306, and he also cites a case from the Orleans Court of Appeal, Hyades’ Social Club v. Seebt, 4 Orleans App. 410, decided in 1907.
“Defendant’s position or contention is that no one can be bound to accord exclusive recognition to a name claimed by others unless it is so registered to give public notice; that plaintiff has never given any such notice of its claim to the name ‘Prince Hall’ in the manner provided by law. Indeed, it offered in evidence a certificate of the Secretary of State that plaintiff has never filed Articles of Incorporation in his office, as required by Act 254 of 1914.
“It is contended that the first statute of this State to give any special rights to a name was Act 254 of 1914, and that not until the Act by which individuals sought to incorporate had actually .been filed in the Central State Office of the Secretary of State did it even exist as a corporation.
“I find nothing in the Act of 1914 purporting to have a retroactive effect, that is, requiring the filing of the’ charter of nonprofit corporations dated prior to the passage of said Act with the Secretary of State. This Act, however, seems to be the first statute on the subject of exclusive names, and the evidence shows that it was complied with by defendant corporation which had no way of knowing that any part of the name selected by plaintiff had previously been appropriated or adopted. The recording of the act of incorporation in the Parish of Orleans in 1913 certainly did not suffice as notice throughout the State of Louisiana.
“The admitted facts relating to the creation of defendant organization are substantially as follows: According to a certificate of the Secretary of State filed in evidence of date March 22, 1954, the ‘Grand Lodge of Free and Accepted Ancient .York Masons for the State of Louisiana’ was incorporated by Act 71. .of 1869, and on March 26, 1947, its charter was amended changing the name to ‘M. W. Prince Hall Grand Lodge, Free and Accepted Masons of Louisiana.’
*103 “On the same date, March 22, 1954, the Secretary of State issued a certificate reciting that ‘Prince Hall Grand Lodge of Free and Accepted Ancient York Masons, (Prince Hall origin) Compact’ as far as the records of his office were concerned, had never filed Articles of Incorporation in said office. This it was not required to do by the Act of 1914 as it was incorporated before the Act was passed. However, it seems to me that if the organization intended to assert the exclusive right to the name ‘Prince Hall’ it should have either complied with the Act of 1914 or otherwise given public notice of such intention. The recording of its charter in the Parish of Orleans only did not in my opinion suffice.
“It does not in my opinion, require a decision of the question as to which of the two organizations first gave notice of the name adopted by it in its charter, or the date of its incorporation, in order to answer the question presented.
“From the testimony, it appears that Prince Hall was made a Mason by Irish Soldiers under General Gage during the Revolutionary War, and that his name has been for years revered by colored Masons. Aside the name ‘Prince Hall’ there is very little similarity in the names of the plaintiff and the defendant organization.
“Plaintiff’s present name is ‘Prince Hall Grand Lodge of Free and Accepted Ancient York Masons (Prince Hall Origin) Compact, In and For the State of Louisiana and Jurisdiction Thereunto Belonging,’ — sometimes also referred .to as the ‘Most Worshipful Prince Hall Grand Lodge of Ancient Free and Accepted York Rite Masons of Louisiana.’
“It is conceded by plaintiff’s learned counsel that if defendant would eliminate from its name the words ‘Prince Hall’ the wishes and desires of his client would be complied with. It is, in my opinion, an unreasonable demand. Certainly the names of the two organizations are not the same, and except for the inclusion in both of the name ‘Prince Hall’ they are not deceptively similar.
“I have not been cited any statute of the State prior to the Act of 1914 according: the exclusive right to a non-profit corporation to the use of a name.
“The decision by the Orleans Court of Appeal cited by plaintiff’s counsel was rendered in the year 1929 — (Grand Orient Lodge of Louisiana v. Jackson, [12 La.App. 555], 125 So. 306). No reference was made in that case to the Act of 1914. It was referred to in the later case of Round Table Club v. Bond, 163 La. 175, 111 So. 667.
“There is no doubt that in other jurisdictions, and maybe in this State, in the exercise of equity jurisdiction courts, in the absence of statute, have afforded the complainant relief by injunction where the name of the defendant was so similar to that of plaintiff injury resulted. It has been frequently held that the use of a name in the corporation will not be enjoined unless it is made to appear by all circumstances, that the proposed use of the name will likely result in injury to the complainant.
“Applying this principle here, it seems to me that even if it can be rightly said that the name of defendant organization is deceptively similar to that of plaintiff, which I do not believe to be true, the record is barren of any evidence to prove injury. Proof of confusion as to some mere negligible matter is not sufficient.
“Cases upholding the principle that injury must be alleged and proven appear in the decision of our Supreme Court in the case Round Table Club v. Bond, supra.
“In conclusion it is a matter of common knowledge that in the names of hundreds of corporations, there appears somewhere in the name of some’celebrity dead or alive; and, in my opinion, unless the arrangement and manner of appearance of such name is such that one corporation cannot reasonably be distinguished from another and injury is shown, injunctive relief should not be granted.
“For the reasons assigned, the exception of no right of action filed by defendant is *104 sustained, the injunction prayed for is denied and this suit is dismissed, at plaintiff’s cost. Judgment is rendered and will be signed accordingly.”
A reading of the record discloses that the findings of fact by the trial judge are eminently correct. We also agree with his legal conclusions with one exception, i. e., he states that Act No. 254 of 1914 was referred to in the “later” case of Round Table Club v. Bond, 163 La. 175, 111 So. 667. Actually, the Round Table Club case, supra, was decided on January 3, 1927 and Grand Orient Lodge of Louisiana v. Jackson, 12 La.App. 555, 125 So. 306 referred to by the trial judge was decided later on December 16, 1929. We do believe, however, that the Round Table Club case, supra, is controlling here, as held by the trial judge, because of the fact that injury should be alleged and proven in order to obtain injunctive relief. Such injury was not present in the case at ’bar and the judgment appealed from is therefore affirmed.
Judgment affirmed.