GUARDIAN LIFE INSURANCE COMPANY OF AMERICA, Plaintiff

v.

GUARDIAN NATIONAL LIFE INSURANCE COMPANY, Defendant.

Civ. A. No. 7110.

United States District Court
E. D. Louisiana,
New Orleans Division.

June 23, 1960.

852

Montgomery, Barnett, Brown & Read, Peter H. Beer, New Orleans, La., Price Topping, New York City, for plaintiff.

Henican, James & Cleveland, C. Ellis Henican, New Orleans, La., for defendant.

J. SKELLY WRIGHT, District Judge.

Plaintiff, a well known "old-line" life insurance company operating throughout the country, seeks to restrain the defendant corporation, a small recent upstart in the insurance field licensed only in Louisiana, from using the word "Guardian" in its corporate name. The basic facts are given in an earlier opinion of the court denying plaintiff's request for a preliminary injunction, 158 F.Supp. 623, 625 and need not be repeated here.[1]

1. The evidence adduced on the trial merely confirmed the "Findings of Fact" previously made. What few additional facts were developed will be mentioned hereinafter.

At the outset, it is important to emphasize that the claim does not arise under the Federal Copyright law,[2] the Lanham Trade-Mark Act[3] or the Louisiana Trade Mark statute.[4] Under the present facts, complainant can invoke only the provisions of the Louisiana Business Corporation Law[5] and of the Insurance Code[6] prohibiting the adoption of a corporate name "deceptively similar" to that of an already established corporation, or the "unwritten" law of unfair competition.[7] There is here, therefore, no absolute property right confirmed in the owner as an exclusive privilege for an arbitrary period by specific governmental declaration. Accordingly, the inquiry cannot be limited to infringement in the strict technical sense. This controversy is governed by broader and more practical considerations.

At first blush, it might be doubted whether the Louisiana corporate name statutes have any application here. Insofar as they were designed to eliminate confusion in governmental records which would hinder administrative dealings with corporations, obviously no right is conferred on private complainants. And insofar as they have a broader purpose to avoid deception in the use of similar names, "this protection * * * is primarily for the benefit of the public generally,"[8] which would seem to give the aggrieved company no standing to invoke these provisions. Nevertheless, certain dispositions of the corporate name section of the Business Corporation Law, not directly relevant here,[9] suggest that these statutes were also intended to benefit the "owner" of a trade name, and it has been recognized that a private company which is threatened by another's assumption of a similar name has sufficient interest to contest the Secretary of State's ruling on "deceptive similarity."[10] Indeed, sub-sec-

2. 17 U.S.C. § 1 et seq.

3. 15 U.S.C.A. § 1051 et seq.

4. LSA–R.S. 51:211–51:223 (Pocket Parts).

5. LSA–R.S. 12:4, subd. B: "The corporate name shall not be the same as, nor deceptively similar to the name of any other corporation, or of any domestic nonprofit corporation or of any foreign corporation authorized to do business in this state unless: * * * (exceptions not here relevant)."

6. LSA–R.S. 22:32(1): "The name of the corporation * * * shall not be the same as nor deceptively similar to the name of any other domestic insurer or of any alien or foreign insurer authorized to do business in this state unless * * (exceptions not here relevant)."

7. Though the complaint alleges that the action "arises under the Fair Trade Laws of the United States," it must be treated as intending the general law of "unfair competition" as recognized by the Louisiana courts, which, except for the corporate name statutes cited, furnishes the only basis for the action. The finding that plaintiff must bring its unfair competition claim under Louisiana law is of no moment since Louisiana follows United States law of unfair competition as recognized generally. But see Sears, Roebuck & Co. v. All States Life Insurance Co., 5 Cir., 246 F.2d 161, 170, where the question as to whether the Lanham Act created a new federal right of action for unfair competition was left open.

8. Continental Ins. Co. v. Martin, 213 La. 147, 34 So.2d 405, 408.

9. LSA–R.S. 12:4, sub-sections C and D, permit unincorporated associations and foreign corporations not yet doing business in the state, respectively, to reserve a corporate name for one year in advance. These provisions clearly show a concern for the holder of the name. See the Note of the Commissioners for the Model Business Corporation Act, reprinted under the cited section in West's LSA–R.S. Vol. 5, pp. 31–32. These comments are relevant in view of the fact that § 4 of the Louisiana Business Corporation Law "is based on and is substantially similar to Section 4 of the Model Business Corporation Act." See "History and Source of Law" under LSA–R.S. 12:4, in id., pp. 31–32.

10. Continental Ins. Co. v. Martin, supra. Of course, a corporation denied authority to do business on the ground that its name is deceptively similar to that of an already established company has a right to judicial review of the Secretary of State's ruling, State ex rel. Equitable Securities Corp. of Nashville v. Conway, 189 La. 272, 179 So. 312, though not in the federal courts, Seaboard Finance

tion H of § 4 [11] of the Business Corporation Law expressly provides that the use by another corporation of a name deceptively similar to that of the complainant may be enjoined by "any * * * corporation interested or affected," notwithstanding the fact that the offender has already received its certificate of authority.

█ We may conclude that, whether *primarily* or *incidentally*, these statutes were intended to afford some measure of protection to corporate trade names, and do, in fact, serve that end. Indeed, precisely because the test here is the likelihood of public deception or confusion, rather than invasion of a property right that causes damage, the protection offered by the corporate name statutes is in some respects broader than under the law respecting trade marks generally. Thus, the operation of these provisions does not depend on the character of the existing name as one susceptible of appropriation or which has acquired a secondary meaning [12] by long use. Under these statutes, only one question is presented: Considering the corporate names, as well as all the circumstances surrounding the operation of the corporations themselves in the State of Louisiana, is there, in fact, any real likelihood of the public being confused or deceived? [13]

█ █ With reference to the parties' corporate names as such, the Louisiana state official charged in the first instance with determining whether they are deceptively similar has ruled they are not.

While his finding is not conclusive on the issue, it is entitled to great weight. [14] Here, it is supported by the fact that the corporate names of several insurance companies operating in the United States include the word Guardian, one whose use of the word predates plaintiff's. Of course, the fact that other insurance companies in other sections of the country use the word Guardian in their corporate names does not determine whether the corporate names here in suit are deceptively similar. [15] That determination must be based on the activities of the parties in the area where they both operate. [16] But, considering such activities, the conclusion is the same.

█ The defendant deals exclusively in so-called mortgage insurance [17] and its only customers are obtained through finance companies. It is true that the mortgage insurance is on the life of the borrower, but the amount involved is geared to the amount of the loan, not in any event to exceed $1,250, which is the maximum allowed the defendant under state law. [18] Plaintiff does not deal in mortgage insurance or in industrial life policies. It deals directly with its policy holders, extending substantial coverage, whereas the defendant's policy holders are poor people required by their finance companies to take out a small life policy with an anonymous insurer to protect the finance company. Again, the fact that there is no competition between the parties here does not necessarily mean that there is no likelihood of confusion in the public mind. But the lack of competition may be a consideration in

Company v. Martin, 5 Cir., 244 F.2d 329. It may be noted that both of these cases deal with the licensing of foreign corporations under similar, but more lenient, name provisions. See LSA–R.S. 12:203, subd. B.

11. LSA–R.S. 12:4, subd. H.

12. See excellent and comprehensive note on secondary meaning in 150 A.L.R. 1067.

13. Continental Ins. Co. v. Martin, supra. See also cases cited in Note 20.

14. Sears, Roebuck & Co. v. All States Life Insurance Co., supra, 246 F.2d 169; Continental Ins. Co. v. Martin, supra.

15. Compare Metropolitan Life Insurance Co. v. Metropolitan Insurance Co., 7 Cir., 277 F.2d 896.

16. Hanover Star Milling Co. v. Metcalf, 240 U.S. 403, 36 S.Ct. 357, 60 L.Ed. 713; United Drug Co. v. Theodore Rectanus Co., 248 U.S. 90, 39 S.Ct. 48, 63 L.Ed. 141.

17. Defendant has, in the past, written an inconsequential amount of other insurance, but these lines have been discontinued.

18. Under the Louisiana statutes defendant has qualified as an industrial insurer with $1,250 limits.

making that determination.[19] It is true that defendant might change its program and offer to sell directly to the public, albeit only the small industrial policies it is authorized to issue, but it will be time enough to consider the effect of such a program if and when it is initiated.

In theory, the finding that defendant's name is not "deceptively similar" to plaintiff's within the meaning of the Louisiana corporate name statutes does not prejudice the question of whether defendant's use of the name violates the law of unfair competition. The Louisiana Business Corporation law specifically so states.[20] But, since the test is the same, [21] in the circumstances of this case at least, the issue of unfair competition is foreclosed by that finding. Indeed, how can there be damage to the plaintiff when there is no likelihood of public confusion?[22] Accordingly, it is unnecessary to consider whether the name "Guardian" is by its nature public or private property, or has, by long use, acquired a secondary meaning. The conclusion, in any event, must be that defendant's present use of its corporate name does not constitute unfair competition.

It follows that the injunction prayed for must be denied.

Judgment accordingly.

19. Sears, Roebuck & Co. **v.** All States Life Insurance Co., supra, and cases there cited at page 167 of 246 F.2d.

20. LSA–R.S. 12:4, subd. E provides: "Nothing in this Section shall abrogate or limit the law as to unfair competition or unfair practice in the use of trade names, nor derogate from the principles of law or the statutes of this state or of the United States with respect to the right to acquire and protect trade names."

There might be some question as to the force of so-called "common law" unfair competition rules under the civilian system of written law obtaining in Louisiana. However, the Louisiana courts have not for a moment hesitated to apply the familiar principles of unfair competition in the absence of statute. See, e. g., Home Beverage Service v. Baas, 210 La. 873, 28 So.2d 481; New Orleans Checker Cabs v. Mumphrey, 205 La.

1083, 18 So.2d 629; Albrecht v. Del Bondio, 188 La. 502, 177 So. 587; Round Table Club v. Bond, 163 La. 175, 111 So. 667; Marcev v. Mandich, 158 La. 15, 103 So. 389; Yellow Cab Co. of New Orleans v. Jones, 156 La. 837, 101 So. 216; Title & Mortgage Guarantee Co. v. Louisiana A. & T. G. Co., 143 La. 894, 79 So. 529; Tefas v. Gatzoulas, 17 La.App. 276, 135 So. 693; Grand Orient Lodge of Louisiana v. Jackson, 12 La.App. 555, 125 So. 306.

21. See Louisiana cases cited in Note 20. For the test for unfair competition in trade names generally, see Restatement, Torts § 728.

22. Compare Metropolitan Life Insurance Co. v. Metropolitan Insurance Co., supra; LaTouraine Coffee Co. v. Lorraine Coffee Co., 2 Cir., 157 F.2d 115; Standard Brands v. Smidler, 2 Cir., 151 F.2d 34. See also Restatement, Torts, § 717.